1998 SD 96

Leroy B. WYMAN, Plaintiff
and Appellant,

v.

TERRY SCHULTE CHEVROLET, INC.,
Defendant and Appellant.

Nos. 19944, 19962.

Supreme Court of South Dakota.

Argued April 28, 1998.

Decided Aug. 19, 1998.

John M. Wilka of Wilka, Haugen & Kirby, Sioux Falls, for plaintiff and appellant.

Gary P. Thimsen and Melanie Carpenter of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

BASTIAN, Circuit Judge.

[¶ 1.] This case involves two separate appeals from two separate judgments following a jury trial. Leroy Wyman (Wyman) appeals from a judgment granting a motion for directed verdict in favor of Terry Schulte Chevrolet, Inc., (Terry Schulte) on Wyman's deceptive trade practices and punitive damages claims. Terry Schulte appeals from a judgment granting Wyman's motion for a directed verdict on the issue of conversion and granting Wyman damages in the amount of $3,995. We reverse and remand.

[¶ 2.] On Friday, July 6, 1990, Wyman went to a used car lot owned and operated by Terry Schulte to purchase a vehicle. At that time Wyman was the owner of a 1968 Chevrolet Caprice. Wyman had purchased the Caprice in October 1989 for $800 which he believed to be a fair price. He drove the car approximately 3,400 miles during the time he owned it.

[¶ 3.] Wyman was interested in purchasing a used 1988 Chevrolet Corsica that Terry Schulte had on its lot. He filled out a purchase order and applied for financing. He took the Corsica home with him over the weekend, leaving the Caprice at Terry Schulte. The parties disagree whether Wyman surrendered title to the Caprice that day.

[¶ 4.] Upon returning to Terry Schulte on Monday, July 9, 1990, Wyman was told that his initial application for financing for the Corsica had not been approved. Wyman testified that he asked for the return of the Caprice and was told that it had been sold over the weekend. In fact, the Caprice was not sold by Terry Schulte until July 20, 1990. The finance manager for Terry Schulte testified that Terry Schulte would not have received any benefit from telling Wyman the Caprice was sold when it was not.

[¶ 5.] Believing he had no other option, Wyman made a second application for financing. Sometime later that week Wyman received financing and purchased the Corsica. Terry Schulte allowed Wyman $3,995 for the trade-in of the Caprice. The general manager testified the Caprice was not worth more than $600 in 1990 but an over-allowance was made to facilitate financing. The Caprice was ultimately sold by Terry Schulte on July 20, 1990, for $625. Terry Schulte lost $164 on the Wyman transaction.

[¶ 6.] Less than a year later Wyman was unable to make the payments. Under the threat of repossession he voluntarily surrendered the vehicle. This lawsuit followed.

[¶ 7.] Wyman brought this action on several theories, including deceit, conversion, deceptive trade practices, and emotional distress. He requested both actual and punitive damages. The case was tried to a jury.

[¶ 8.] After all the evidence had been presented, the trial court excluded the testimony of all of Wyman's witnesses, with the exception of Wyman himself, and instructed the jury to disregard the testimony. The trial court found that the witnesses' testimony was irrelevant and more prejudicial than probative under SDCL 19–12–3. The trial court directed verdict in favor of Terry Schulte on Wyman's deceit, deceptive trade practices, and punitive damages claims. The trial court also directed a verdict in favor of Wyman on the issue of conversion and awarded him $3,995. The court allowed only Wyman's claim of intentional infliction of emotional distress to go to the jury. The jury found in favor of Terry Schulte on that claim. The jury verdict has not been appealed. Wyman appeals the rulings of the trial court regarding deceptive trade practices and punitive damages. Terry Schulte appeals the rulings of the trial court regarding conversion and damages. Each issue is addressed below.

[¶ 9.] The standard of review is well settled.

Upon [a motion for a directed verdict], the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*Haberer v. Radio Shack*, 1996 SD 130 ¶ 28, 555 N.W.2d 606.

1. Issues presented by Wyman.

[¶ 10.] **Whether the trial court properly entered a directed verdict in favor of Terry Schulte on Wyman's deceptive trade practices claim.**

[¶ 11.] Wyman brought his claim for deceptive trade practices pursuant to SDCL 37–24–6(1) which provides:

It is a deceptive act or practice for any person to:

(1) Knowingly and intentionally act, use or employ any deceptive act or practice, fraud, false pretense, false promise or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived or damaged thereby;

[¶ 12.] SDCL 37–24–1(8) provides that "person" means, inter alia, a corporation.

[¶ 13.] SDCL 37–24–31 provides that any person who claims to have been adversely affected by any act or a practice declared to be unlawful by 37–24–6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice.

[¶ 14.] During the trial former employees David Englert, Tom Thoms, Steven Stein, and former customers Wendy Blakney and Connie Miller testified for Wyman on the issue of deceptive trade practices. Finding the evidence irrelevant and more prejudicial than probative, the trial court excluded it and instructed the jury to disregard it.

[¶ 15.] SDCL 19–12–1 provides that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[¶ 16.] SDCL 19–12–3 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶ 17.] The term prejudice does not mean damage to the opponent's case from the legitimate probative force of the evidence, but refers to the unfair advantage which results from the capacity of the evidence to persuade by illegitimate means. *Kaarup v. Schmitz, Kalda and Associates,* 436 N.W.2d 845, 850 (S.D.1989); *State v. Dokken,* 385 N.W.2d 493, 497 (S.D.1986). The trial court has broad discretion in balancing the probative value of evidence versus its prejudicial effect, and the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Kaarup,* 436 N.W.2d at 850; *State v. Grooms,* 399 N.W.2d 358, 361 (S.D.1987).

[¶ 18.] This action was brought against Terry Schulte as a corporation. The issue of corporate liability has been addressed by this Court in *State v. Hy Vee Food Stores, Inc.,* 533 N.W.2d 147 (S.D.1995):

We begin our analysis with the rather mundane observation that a corporation cannot act but through its agents. Well settled is the basic principle that criminal liability for certain offenses may be imputed to corporate defendants for the unlaw-

ful acts of its employees, provided that the conduct is within the scope of the employee's authority whether actual or apparent. (citations omitted).

*Hy Vee Food Stores, Inc.,* 533 N.W.2d 147 at 149. Although the case pertained to criminal liability, we find the rule of law also applies here.

[¶ 19.] Connie Miller testified that in June 1990, she went to Terry Schulte to purchase a vehicle. She dealt with Lance Swalve, a manager. She left her vehicle there to test-drive a vehicle she was considering purchasing. When she asked for her vehicle back, she was advised that it had been sold. She admitted that she signed the title over to Terry Schulte before she left on the test-drive but thought it was just part of the normal paperwork. Swalve was the manager who also dealt with Wyman during his transactions with Terry Schulte one month later.

[¶ 20.] Wendy Blakney testified that in September 1993, she traded in a Chevrolet Sommerset to purchase a Chevrolet Blazer from Terry Schulte. After test-driving the Blazer over a weekend and finding it unsatisfactory, she attempted to return it. She was told by a salesperson that her vehicle had been sold. She reluctantly purchased the Blazer which was later repossessed.

[¶ 21.] David Englert testified that he worked for Terry Schulte's predecessor, Frank Stinson Chevrolet,[1] from 1982 to 1985. He was assistant manager for used cars. He stated there were occasions when a customer was falsely told that his car was missing or sold. Englert said that he personally engaged in the practice two or three times. However, he could not identify any salesperson or customer by name. He further testified that he had no knowledge of the practices by Terry Schulte after 1985.

[¶ 22.] Steven Stein testified that he had been a used car salesman for Frank Stinson Chevrolet and later Terry Schulte for about two years until October 1986. He stated that he was told by his manager that he should falsely tell a customer that his vehicle had

---

1. The change from Frank Stinson Chevrolet to Terry Schulte Chevrolet was in name only and the business essentially continued with the same team of employees and managers.

been sold or was being test-driven by another customer.

[¶ 23.] Tom Thoms testified that he worked for Terry Schulte as a salesman for about thirteen months in 1987 and 1988. He stated that he was aware of other salespersons falsely telling a customer that his car had been sold. He testified that he was not directed by management to engage in the practice. He further testified that he had no knowledge of the sales practices at Terry Schulte after 1988.

[¶ 24.] The testimony of the former employees and customers pertained directly to alleged deceptive sales practices on the part of Terry Schulte for a period of ten years. We find, therefore, the testimony of Terry Schulte employees David Englert, Tom Thoms and Steven Stein, and customers Connie Miller and Wendy Blakney, to be relevant to the issue of deceptive trade practices. We also find the probative value of the evidence is not outweighed by its prejudicial effect. Accordingly, we conclude the trial court abused its discretion when it disallowed the evidence.

[¶ 25.] Viewing the evidence in a light most favorable to Wyman and giving him the benefit of all reasonable inferences that can be drawn from the evidence, we find substantial evidence exists so that reasonable minds could differ. We conclude that a directed verdict was not appropriate. Accordingly, the trial court is reversed and the case remanded for retrial on this issue.

[¶ 26.] **Whether the trial court properly entered a directed verdict in favor of Terry Schulte on Wyman's claim for punitive damages.**

[¶ 27.] Wyman also appeals from the judgment granting a motion for directed verdict in favor of Terry Schulte on Wyman's punitive damages claim on the issues of conversion and deceptive trade practices. As discussed below, this case is also remanded for retrial on the issue of conversion. Accordingly, we need not address the issue of puni-

tive damages as related to that claim. However, the claim for punitive damages based upon deceptive trade practices merits discussion.

[¶ 28.] As set forth above, SDCL 37–24–31 limits recovery to any person who claims to have been adversely affected by a deceptive act or practice to "actual damages suffered."

[¶ 29.] In *Dairyland Ins. Co. v. Wyant*, 474 N.W.2d 514 (S.D.1991), we held that compensatory or actual damages differ from punitive damages. Punitive damages are awarded not to compensate an injured party for a loss but "for the sake of example, and by way of punishing the defendant." *Id.*; SDCL 21–3–2. They are distinct from and "in addition to the actual damage." *Id.*[2]

[¶ 30.] In reviewing statutes passed by our legislature, we must presume the legislature meant what it said. Accordingly, we find that by its enactment of SDCL 37–24–31 the legislature has foreclosed the recovery of punitive damages to any person claiming to have been adversely affected by a deceptive act or practice.

2. Issues presented by Terry Schulte

[¶ 31.] **Whether the trial court erred in granting Wyman a directed verdict on the issue of conversion.**

[¶ 32.] Conversion is the act of exercising control or dominion over personal property in a manner that repudiates the owner's right in the property or in a manner that is inconsistent with such right. *Ward v. Lange*, 1996 SD 113, ¶ 17, 553 N.W.2d 246.

[¶ 33.] Terry Schulte contends that Wyman purchased the Corsica on July 6, 1990. Wyman, however, testified that he still had the title to the Caprice in his possession when he drove the Corsica off the lot on that date. Wyman testified that he did ultimately purchase the Corsica and sign over the title of the Caprice to Terry Schulte sometime the following week. The date on the Assignment of Title, however, reads July 6, 1990. The controller at Terry Schulte testified that to

2. *See also* 22 Am.Jur.2d, *Damages*, § 24 (1988): The phrase "actual damages" is sometimes used synonymously with the term "compensatory damages." The term "actual damages" is synonymous with compensatory damages and excludes punitive damages. *Id.*

the best of his knowledge, Wyman signed over the title of the Caprice on July 6, 1990. According to the business records of Terry Schulte, Wyman signed the title either on Friday or Saturday, July 6 or 7, 1990.

[¶ 34.] Accepting the evidence which is most favorable to Terry Schulte and indulging all legitimate inferences therefrom in its favor, we find sufficient evidence exists to the extent that reasonable minds could differ as to whether Terry Schulte had valid title to the Caprice on July 6, 1990, and therefore, did not exercise control or dominion over the vehicle in a manner that repudiated Wyman's right in the property or in a manner that was inconsistent with such right. Accordingly, we find that a directed verdict was not appropriate and the trial court's decision was an abuse of discretion. The decision is reversed and the matter remanded for retrial.

[¶ 35.] **Whether the trial court erred in awarding Wyman $3,995 for the alleged conversion.**

[¶ 36.] Terry Schulte also appeals from the judgment granting a motion for directed verdict in favor of Wyman on Wyman's damages claim on the issue of conversion. Because this case is remanded for retrial on the issue of conversion and the damages claim will be reconsidered by the fact finder, we need not address this issue.

[¶ 37.] We reverse and remand for retrial on the issues of deceptive trade practices, conversion, and damages consistent with this decision.

[¶ 38.] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

[¶ 39.] BASTIAN, Circuit Judge, for SABERS, J., disqualified.

