1999 SD 113

**DAKTRONICS, INC., Plaintiff and Appellee,**

v.

**Miles McAFEE, Personally and, d/b/a Speed Pitch Indicator, Golden Gate Sports and David E. Baker, Defendants and Appellants.**

No. 20620.

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1999.

Decided Aug. 18, 1999.

Roberto A. Lange of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Frank A. Bettmann and Tina M. Hogue of Finch Bettman Maks, Rapid City, South Dakota, Attorneys for defendants and appellants.

AMUNDSON, Justice.

[¶ 1.] Miles McAfee and David Baker appeal trial court's grant of summary judgment in favor of Daktronics for claims relating to development of a baseball pitch speed indicator. We affirm.

## FACTS

[¶ 2.] In March 1988 Baker, a baseball coach at Bacone College in Oklahoma, contacted Daktronics by letter expressing he had an idea which Daktronics would be interested in, but was unable to provide further information without disclosing the idea in its entirety. In April 1988 Baker initiated a meeting with Daktronics, where Baker disclosed an idea of a pitch speed indicator that would display the type and speed of a pitched baseball to spectators at a baseball game. Baker requested Daktronics develop a prototype of such a pitch speed indicator.

[¶ 3.] Daktronics built a prototype for Baker by interfacing a radar gun with a console and digital display board. All of the materials necessary for the prototype were readily available on the market. The radar gun was purchased by Baker from MPH Industries and the console and display boards were manufactured by Daktronics.

[¶ 4.] After manufacture of the prototype, Miles McAfee became Baker's partner. Baker and McAfee contacted various major league ballparks for the sale of their product. They advertised the product, in conjunction with Daktronics, at the Major League Baseball Annual Conference in Atlanta, Georgia, and the NCAA Conference in Nashville, Tennessee. Between 1988 and 1992, McAfee and Baker ordered four pitch speed indicators from Daktronics.

[¶ 5.] In the fall of 1996 Daktronics began manufacturing pitch speed indicators for use in major league ballparks.

[¶ 6.] Baker and McAfee claim the speed pitch indicators Daktronics sold to major league baseball teams are essentially the same as the idea first discussed with Daktronics in early 1988.* Daktronics sued McAfee seeking a declaratory judgment. McAfee counterclaimed, bringing four causes of action: misappropriation of trade secret, unjust enrichment, conversion, and breach of fiduciary duty. The trial court granted summary judgment in favor of Daktronics.

[¶ 7.] McAfee and Baker appeal, raising the following issues:

1. Whether the trial court erred in granting summary judgment on Baker and McAfee's claim of misappropriation of trade secret.

2. Whether the trial court erred in determining no fiduciary duty existed as a matter of law between the parties.

3. Whether the trial court erred by concluding that all remaining counts of the counterclaim (conversion and unjust enrichment) also fail due to no "protectible property interest."

## STANDARD OF REVIEW

[¶ 8.] Our standard of review for a grant or denial of summary judgment under SDCL 15–6–56(c) is well settled:

> [W]hether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Benson v. Goble*, 1999 SD 38, ¶ 9, 593 N.W.2d 402, 404; *Lamp v. First Nat. Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993); *Waddell v. Dewey Cty. Bank*, 471 N.W.2d 591, 592 (S.D.1991). " '[S]um-

---

* The displays are unlike McAfee and Baker's speed pitch indicator in that Daktronics' displays are permanent installations and show additional data other than pitch speed and type of pitch.

mary judgment is appropriate to dispose of legal, not factual questions.'" *Benson*, 1999 SD 38, ¶ 9, 593 N.W.2d at 404–05 (quoting *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 94 (S.D.1993) (citations omitted)). However, when " 'the facts are undisputed, the issue becomes one of law for this Court to decide.'" *Id.* (citing *Harn*, 506 N.W.2d at 94 (citing *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 498 (S.D.1990); *Gasper v. Freidel*, 450 N.W.2d 226, 229 (S.D.1990))).

## DECISION

### [¶ 9.] 1. Trade secrets claim.

■ [¶ 10.] McAfee and Baker contend the trial court erred in granting summary judgment because genuine issues of material fact exist as to their claim for misappropriation of a trade secret.

[¶ 11.] We have previously addressed the question of what constitutes a trade secret in *Weins v. Sporleder*, 1997 SD 111, 569 N.W.2d 16. While the decision in *Weins* followed a jury trial and raised the issue of failure to grant judgment notwithstanding the verdict, the analysis provided in *Weins* is determinative of the present case.

■ [¶ 12.] McAfee and Baker bear the burden of establishing the existence of a trade secret. *Weins*, 1997 SD 111, ¶ 18, 569 N.W.2d at 20 (citations omitted). "Without a proven trade secret, there can be no action for misappropriation, even if defendants' actions were wrongful." 10 Stuart M. Speiser, et al., The American Law of Torts, § 34:23 at 89 (1993). McAfee claims that the "trade secret" in this case is displaying for public viewing the speed and type of pitch thrown within a ballpark.

[¶ 13.] SDCL 37–29–1(4) defines "trade secret" as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process that:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not be-

ing readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In *Weins*, this Court concluded the existence of a trade secret is a mixed question of law and fact. The legal question is, " 'whether the information in question could constitute a trade secret under the first part of the definition of trade secret' " under SDCL 37–29–1(4). *Weins*, 1997 SD 111, ¶ 16, 569 N.W.2d at 20 (quoting *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F.Supp. 1405, 1427 (N.D.Iowa 1996) (quoting *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995)). SDCL 37–29–1(4) defines trade secret as: "information, including a formula, pattern, compilation, program, device, method, technique or process." The factual inquiry involves the remaining subsections of SDCL 37–29–1(4)(i) and (ii). *Id.* at ¶ 16, 569 N.W.2d at 20.

■ [¶ 14.] McAfee and Baker claim a trade secret in the concept of displaying speed and type of pitch thrown for the public to view at a ballpark. However, " 'the commonly accepted definition of a trade secret does not include a marketing concept or new product idea submitted by one party to another.'" *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2ndCir.1993) (quoting 2 R. Milgrim, Milgrim on Trade Secrets § 8.03 at 8–31 (1992 & Supp.1992) (quoting *Richter v. Westab, Inc.* 529 F.2d 896, 900 (6thCir.1976))) (citations omitted). Therefore, simply possessing a non-novel idea or concept without more is generally, as a matter of law, insufficient to establish a trade secret. *See Frink America, Inc. v. Champion Road Machinery Ltd.*, 48 F.Supp.2d 198, 206 (1999); *Hudson Hotels*, 995 F.2d at 1177.

[¶ 15.] Even if McAfee's product passed the legal inquiry of SDCL 37–39–1(4), it

fails under the remaining subsections. The first subsection requires there to be economic value that is not readily ascertainable by other means. *Weins,* 1997 SD 111, ¶ 20, 569 N.W.2d at 21 (citing SDCL 37–29–1(4)(i)). In *Weins,* we adopted the Seventh Circuit Court of Appeals definition that, " 'this requirement precludes trade secret protection for information generally known within an industry even if not to the public at large.' " *Weins,* 1997 SD 111, ¶ 20, 569 N.W.2d at 21 (quoting *Mangren Research & Dev. v. National Chem. Co.,* 87 F.3d 937, 942 (7thCir.1996)).

[¶ 16.] Baker and McAfee argue that the issue of whether information is generally known or readily ascertainable is a question of fact. *See Weins,* 1997 SD 111, ¶ 17, 569 N.W.2d at 20. Ordinarily, this is true. *Moss, Adams & Co. v. Shilling,* 179 Cal.App.3d 124, 224 Cal.Rptr. 456, 458 (1986). However, a court may determine a question of fact by summary judgment if it appears to involve no genuine issues of material fact and the claim fails as a matter of law. *Moore v. Marty Gilman, Inc.,* 965 F.Supp. 203, 217 (D.Mass.1997) (granting summary judgment where plaintiff's claim failed as a matter of law where information was already in the public domain and could not be a trade secret); *Nordale, Inc. v. Samsco, Inc.,* 830 F.Supp. 1263, 1273 (D.Minn. 1993) (granting summary judgment on trade secrets claim where no reasonable efforts to maintain secrecy), *aff'd,* 86 F.3d 1179, 1996 WL 283616 (1996); *Aerospace America Inc. v. Abatement Techs., Inc.,* 738 F.Supp. 1061, 1070 (E.D.Mich.1990) (granting summary judgment because information openly advertised could not be trade secret and there was no confidential relationship); *Moss, Adams & Co.,* 224 Cal.Rptr. at 458 (holding plaintiff's claim failed as a matter of law, the use of names on rolodex did not constitute trade secret).

[¶ 17.] Baker and McAfee's concept involved combining the use of a radar gun, a console, and a display. It is undisputed that all of these items were readily available on the market. "Combining these materials cannot be considered a trade secret if the formula was 'within the realm of general skills and knowledge' in the relevant industry." *Weins,* 1997 SD 111, ¶ 21, 569 N.W.2d at 21 (citing *Computer Care v. Service Sys. Enters., Inc.,* 982 F.2d 1063, 1072 (7thCir.1992) (quoting *Service Ctrs. of Chicago, Inc. v. Minogue,* 180 Ill.App.3d 447, 129 Ill.Dec. 367, 371, 535 N.E.2d 1132, 1136 (1989))) (other citations omitted). "Thus, the focus turns to the 'ease with which information can be developed through other proper means: if the information can be readily duplicated without involving considerable time, effort or expense, then it is not secret.' " *Weins,* 1997 SD 111, ¶ 21, 569 N.W.2d at 21 (quoting Computer Care, 982 F.2d at 1072) (quoting *Hamer Holding Group, Inc. v. Elmore,* 202 Ill.App.3d 994, 148 Ill.Dec. 310, 311, 560 N.E.2d 907, 908 (1990))).

[¶ 18.] There is nothing novel about combining these materials to display speeds and types of pitches thrown for the public's view. It is undisputed Daktronics had itself utilized a speed indicator with a display in sporting events such as ski jumping prior to 1988. Further, prior to 1988, the Jugs corporation had developed and been using such a speed pitch indicator to display the speed of a pitched baseball in amusement arcades. The product in which McAfee and Baker claim a trade secret was within the general knowledge of the relevant industry, and, in fact, already existed, albeit for different use.

[¶ 19.] In addition, this Court notes that Daktronics is not alone in designing speed pitch displays for major league baseball stadiums. As of the time of the motion for summary judgment, the speed of pitches were displayed at Houston's Astrodome, the Veterans Stadium in Philadelphia, Pittsburgh's Three River Stadium, San Francisco's Candlestick Park and the Skydome in Toronto. Competitors of Daktronics had designed the display systems for each of these ballparks.

[¶ 20.] Considering the above, clearly the concept in which McAfee and Baker claim to possess a trade secret contains ingredients that were all in the public realm, could be easily duplicated and, in fact, were already in existence. *See Weins,* 1997 SD 111, ¶ 26, 569 N.W.2d at 22. As the District Court of Massachusetts noted in a trade secret case dealing with public knowledge:

> Indeed, it is not even enough to warrant protection that the information is known by sufficiently few people to make it commercially valuable. After all, many types of professionals have specialized knowledge and information that they offer to the public in exchange for a fee. ... The same is true here. Whether or not the information conveyed by plaintiffs was new and valuable to defendants, and whether or not it alerted defendants to a potential market about which defendants otherwise would have remained ignorant, the information was already in the public domain. Thus, it was not a trade secret.

*Moore,* 965 F.Supp. at 217.

[¶ 21.] The trial court found, based on the submissions in resistance to the motion for summary judgment, that Baker and McAfee failed to carry their burden to establish a trade secret.

### [¶ 22.] 2. Breach of fiduciary duty.

[¶ 23.] McAfee and Baker claim Daktronics breached a fiduciary duty by using information obtained from McAfee and Baker. "The existence of a fiduciary duty and the scope of that duty are questions of law for the court." *High Plains Genetics Research, Inc. v. J.K. Mill–Iron Ranch,* 535 N.W.2d 839, 842 (S.D.1995) (citing *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 839 (S.D.1990)). South Dakota has adopted the view that:

> [F]iduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interest and the unprotected party has placed its trust and confidence in the other.

*High Plains Genetics Research, Inc.,* 535 N.W.2d at 842 (citing *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 500 (S.D.1990) (citing SDCL 55–7–2(2)). McAfee and Baker argue Daktronics has a fiduciary duty because it shared a "joint pecuniary interest" in marketing by the trade shows in December of 1988 and January of 1989 to major league baseball and NCAA. However, the suggestion of a joint venture is denounced by McAfee's own admission in a letter to Daktronics, "In the past I personally mentioned to you about doing a joint venture with this unit and you declined."

[¶ 24.] It has been stated:

> One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.

*Ainsworth v. First Bank of South Dakota,* 472 N.W.2d 786, 788 (S.D.1991). Daktronics may have had superior knowledge and technical skills in the development and marketing of a speed pitch indicator, but McAfee and Baker were not in a dependent position, lacking in mental acuity or business intelligence. *See High Plains Genetics Research,* 535 N.W.2d at 842. This was a routine business relationship. The trial court was correct in concluding that based on this record there was no fiduciary relationship.

### [¶ 25.] 3. Conversion.

[¶ 26.] Baker and McAfee also allege that the information imparted by them to Daktronics was proprietary in nature and was converted by Daktronics. "Conversion is the act of exercising control or dominion over personal property in a manner that repudiates the owner's right

in the property or in a manner that is inconsistent with such right." *Wyman v. Terry Schulte Chevrolet, Inc.,* 1998 SD 96, ¶ 32, 584 N.W.2d 103, 107; *Ward v. Lange,* 1996 SD 113, ¶ 17, 553 N.W.2d 246, 251; *Scherf v. Myers,* 258 N.W.2d 831, 834 (S.D. 1977). Baker and McAfee appear to argue that Daktronics converted their idea or concept of displaying the speed and type of pitch thrown to the public view.

[¶ 27.] The trial court concluded the claim of conversion failed because it depends on a wrongful interference with a property interest. We agree. McAfee and Baker have failed to show a property interest. Ideas which are not novel and "are in the public domain may freely be used by anyone with impunity." *Murray v. National Broad. Co., Inc.,* 844 F.2d 988, 993 (2dCir.1988), *cert denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). Since there was no property interest, there could be no conversion.

[¶ 28.] We have considered the other issue raised by appellants, and conclude that it is without merit.

[¶ 29.] Affirmed.

[¶ 30.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur.