#29725, #29726-aff in pt & rev in pt-JMK
**2022 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

#29725

DT-TRAK CONSULTING, INC.,
A South Dakota Corporation,                          Plaintiff and Appellee,

v.

REMA KOLDA, an Individual,                          Defendant and Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
#29726

DT-TRAK CONSULTING, INC.,
A South Dakota Corporation,                          Plaintiff and Appellant,

v.

REMA KOLDA, an Individual,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
HAND COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KENT SHELTON
Judge

\* \* \* \*

TIMOTHY R. WHALEN
Lake Andes, South Dakota                          Attorney for appellant in
                                                  #29725 and appellee in #29726.

\* \* \* \*

ARGUED
MAY 26, 2022
OPINION FILED **08/17/22**

* * * *

SANDER J. MOREHEAD
JORDAN FEIST of
Woods, Fuller, Shultz & Smith P.C.
Sioux Falls, South Dakota

Attorneys for appellant in
#29726 and appellee in #29725.

#29725, #29726

KERN, Justice

[¶1.] DT-Trak Consulting, Inc. (DT-Trak) sued its former employee, Rema Kolda, for alleged violations of a non-compete agreement. DT-Trak and Kolda filed cross-motions for summary judgment, both of which were denied by the circuit court. We granted intermediate appeal of the circuit court's denial of both parties' respective summary judgment motions. We affirm in part, reverse in part, and remand.

## Factual and Procedural History

[¶2.] Both parties agree that the material facts in this case are undisputed. DT-Trak is a medical consulting firm and independent contractor, based in Miller, South Dakota. It provides consulting services to hospitals and other medical providers, such as medical coding, compliance auditing, billing, medical staffing, workflow analysis, and other support services. DT-Trak alleges that it provides its services throughout the United States; specifically, that it has active contracts with clients in 19 states and potential clients or pending bids for clients in several other states.

[¶3.] Kolda first began working for DT-Trak in 2004. During Kolda's employment, DT-Trak provided her training so that she could receive a certification in the ICD-10 system of medical coding. In exchange for DT-Trak paying for Kolda's training, Kolda agreed, in a prior written agreement, to either continue working for DT-Trak for five years or, if she left DT-Trak's employment early, repay DT-Trak for the costs of her training and certification. The parties agree that the ICD-10 medical coding system is a universal coding system in the public domain

and is not, in and of itself, a trade secret, confidential information, or proprietary to DT-Trak.

[¶4.]        Kolda continued working for DT-Trak until July 2016, at which time she voluntarily terminated her employment.  After a few months, she returned to work for DT-Trak as a medical coder beginning in September 2016.  Kolda signed a new agreement (the Agreement) when she returned to work, which is the non-compete agreement at issue in this case.[1]  In DT-Trak's view, the Agreement, which is discussed in more detail herein, prohibits Kolda from working, directly or indirectly, for a period of two years upon cessation of employment with DT-Trak, with any entity in the United States that engages in medical coding services.

[¶5.]        On January 31, 2019, Kolda gave notice to DT-Trak that she was terminating her employment effective February 15, 2019.  Shortly before providing this notice, Kolda had accepted employment with San Carlos Apache Healthcare Corporation (San Carlos), a medical provider in Arizona operating a hospital and a clinic, for which she would work remotely from her existing residence in St. Lawrence, South Dakota.  San Carlos previously had a contract with DT-Trak that expired at the end of 2018 and was not renewed.  Thus, there was no active contract between San Carlos and DT-Trak for any of DT-Trak's services at the time that Kolda gave notice to DT-Trak that she was resigning and had accepted employment with San Carlos.

---

1.     Kolda signed a non-compete agreement with DT-Trak as part of her previous employment; however, this first non-compete agreement does not appear in the record.

[¶6.]        Since 2019, Kolda has been working remotely from her home in South Dakota as a medical coder for San Carlos in Arizona.  Because of this employment, DT-Trak filed a four-count complaint against Kolda on October 28, 2019, asserting that she is violating multiple provisions of the Agreement.  In Count 1 of the complaint, DT-Trak claims that Kolda is in breach of the non-disclosure provision of the Agreement because she "is wrongfully using and disclosing DT-Trak's proprietary information, Confidential Information, and trade secrets during her employment with San Carlos."  Count 2 alleges that Kolda is in breach of the non-compete provision of the Agreement by working as a medical coder within the United States.  In Count 3, DT-Trak asserts that Kolda is in breach of the non-solicitation provision of the Agreement because she "solicited DT-Trak's employees to leave employment with DT-Trak, and continues to do so despite written demand that she cease doing so."  Count 4 of the complaint avers that "in the course of her employment with San Carlos, Kolda has used[,] disclosed and otherwise misappropriated trade secrets belonging to DT-Trak."

[¶7.]        In its complaint, DT-Trak requests that the circuit court enter preliminary and permanent injunctions "prohibiting Kolda from working for San Carlos Consulting, Inc.,[2] or any other 'competing business' as defined by the Employment Agreements for two years after entry of the order and judgment; prohibiting Kolda from using or disclosing DT-Trak's Confidential Information or

---

2.      San Carlos is not a consulting firm and its name does not include "Consulting, Inc."  As discussed above, its full name is San Carlos Apache Healthcare Corporation, and it is a medical provider that had previously hired DT-Trak to provide consulting services.

trade secrets; and prohibiting Kolda from directly or indirectly soliciting, requesting, causing or inducing any person to leave the employment of DT-Trak[.]" DT-Trak further requests damages, including "the greater of its liquidated or actual damages under the Employment Agreement with Kolda[,]" "exemplary damages[,]" and an "award for costs and expenses, including the reasonable attorney fees incurred in enforcing the Employment Agreement[.]"

[¶8.]		Kolda answered, denying DT-Trak's claims and counterclaiming for barratry. On April 16, 2021, DT-Trak filed a motion for partial summary judgment on Count 2 of its complaint, asserting that no material issue of fact was in dispute that Kolda has and is violating the non-compete provision of the Agreement. On April 20, 2021, Kolda moved for summary judgment on all counts in DT-Trak's complaint, arguing that she did not violate any provisions of the Agreement. Alternatively, Kolda argued that even if she is violating the Agreement, its non-compete provision was invalid as an unlawful restraint on her trade because of the breadth of the work prohibited and the expansive geographic limitations contained therein. Kolda further asserted that she possessed no trade secret or confidential or proprietary information of DT-Trak. Although Kolda's motion requested summary judgment on all counts in DT-Trak's complaint, her brief in support of the motion did not address Count 3, DT-Trak's employee solicitation claim. However, in its brief in opposition to Kolda's summary judgment motion, DT-Trak stated that "it is no longer seeking relief under Count III of its Complaint."[3]

---

3.	Counsel for DT-Trak confirmed this position in oral argument before this Court.

[¶9.] The circuit court held a hearing on June 14, 2021, on the parties' cross-motions for summary judgment at which it denied both parties' motions, stating that it felt there was "enough information here to turn this to a jury." During this hearing, DT-Trak clarified that it did not believe that the circuit court needed to reach any issue beyond Count 2 if it granted summary judgment to DT-Trak on that count because "DT-Trak isn't seeking additional relief under those [other] claims." However, it further asserted that "if the [c]ourt would reject DT-Trak's claims under count two, then under counts one and four, DT-Trak still has claims." The circuit court entered an "Order Denying Motions for Summary Judgment" on June 30, 2021.

[¶10.] Both parties petitioned this Court, on August 2, 2021, for intermediate appeal of the circuit court's denial of their summary judgment motions. On August 20, 2021, this Court granted both Kolda's and DT-Trak's petitions for intermediate appeal, which we now consolidate.

## Standard of Review

[¶11.] "We review a court's denial of a motion for summary judgment under the de novo standard of review." *Owners Ins. Co. v. Tibke Construction, Inc.*, 2017 S.D. 51, ¶ 8, 901 N.W.2d 80, 83 (citation omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *North Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61 (quoting SDCL 15-6-56(c)). Additionally, we "review de novo both the interpretation

of the terms of a contract and the meaning of a statute." *Franklin v. Forever Venture, Inc.*, 2005 S.D. 53, ¶ 7, 696 N.W.2d 545, 548.

## Analysis and Decision

[¶12.]     DT-Trak moved for summary judgment as to Count 2 of its complaint, while Kolda moved for summary judgment in her favor on all counts in the complaint. Both parties agree that Count 3 is no longer an issue in this lawsuit. Both parties also contend that there are no genuine issues of material fact and that the circuit court erred in denying their respective summary judgment motions. We first discuss whether the circuit court erred in denying summary judgment to both DT-Trak and Kolda on Count 2. Next, we discuss whether the circuit court erred in denying Kolda summary judgment on Counts 1 and 4.

### *Count 2—Cross Motions for Summary Judgment*

[¶13.]     Count 2 of DT-Trak's complaint asserts that Kolda has and is violating the non-compete provision of her Agreement with DT-Trak. Kolda argues that she is not in breach of the plain language of the non-compete provision because San Carlos does not provide medical coding services for other healthcare providers in the same way that DT-Trak does.

[¶14.]     The disputed non-compete provision is contained in § 2 and provides:

> Non-Competition. At all times during which Employee is employed by Employer and during the period commencing on the date of the termination of Employee's employment with Employer and ending two years after such date, Employee agrees that Employee will not, anywhere in the Business Area, engage, directly or indirectly, in any capacity whatsoever, whether as an officer, director, stockholder, owner, proprietor, partner, member, co-owner, investor, *employee*, trustee, manager, consultant, independent contractor, co-venturer, lender, financier, agent, representative or otherwise, *in a*

> *Competing Business*, or otherwise hold any interest in a
> Competing Business.

(Emphasis added.)  The Agreement defines a Competing Business in § 1.3 as:

> any individual, corporation, partnership, limited partnership,
> limited liability company, association, trust (business or
> otherwise), institution, foundation, pool, plan or other entity or
> organization (other than Employer) that engages or proposes to
> engage in the Business of Employer.

The definition of a Competing Business thus depends on the definition of the

Business of Employer, which the Agreement defines in § 1.1 as follows:

> "Business" or "Business of Employer" shall mean professional
> medical coding, data entry, third-party billing and accounts
> receivable services and related activities for healthcare service
> providers including, but not limited to, the following services:

>> Professional medical coding; Electronic Health Record
>> Services (EHR); Electronic Data Entry (any database or
>> software); Error Report Management and Completion;
>> Third Party Billing, all payer sources; Accounts
>> Receivable; Posting; Collections (120+ days, etc.); Quality
>> Assurance of Revenue Generation Cycle; Comprehensive
>> Revenue Generation Services; Compliance Auditing
>> HIPAA, etc.; Data Integrity Audits, entire revenue
>> generation cycle; Provider and Staff Education; Patient
>> Registration; Staff & Program Development/Evaluation
>> Criteria Development; Comprehensive Consultative
>> Services for Healthcare Administrative, Financial, HIM
>> and BO Functions; Revenue Enhancement Auditing;
>> Development and Implementation of Work Flow
>> Processes Relating to Revenue Generation Cycle;
>> Planning, Implementing and Facilitation of
>> Training/Workshops; Feasibility Studies for or
>> Development of Revenue Generation Cycle or
>> Development; Internal Controls Policy Evaluation,
>> Implementation and Management; "Special Projects"-
>> Analysis and Development of Various Health an [sic]
>> Revenue Generation Studies; Financial Projections for
>> Healthcare Facilities; Cost Analysis Studies for
>> Healthcare Facilities; Chargemaster Audit,
>> Implementation and Utilization.

The Agreement additionally provides in § 1.2 that the "Business Area" within which Kolda may not engage, directly or indirectly, with a Competing Business includes the entirety of the United States.

[¶15.]    It is undisputed that Kolda is working, within the United States, directly as an employee for San Carlos, a healthcare provider.  It is also undisputed that she is employed as a medical coder for San Carlos.  According to DT-Trak, because Kolda is an individual engaging in the business of DT-Trak, she meets the definition of a Competing Business.  It further contends that because the Agreement prohibits Kolda from engaging in any capacity whatsoever with a Competing Business, she has violated the Agreement.

[¶16.]    On the contrary, to determine whether a violation has occurred, we first look at the language of the non-compete clause, not the definition of Competing Business.  Because Kolda is working as an *employee* for San Carlos the question is whether Kolda's employer, San Carlos, is a Competing Business under the definition provided in the Agreement, not whether Kolda, *an individual,* is a Competing Business.  *See* Agreement § 2 (prohibiting Kolda from engaging "in any capacity whatsoever" anywhere in the United States "as . . . an employee . . . in a Competing Business").

[¶17.]    To be a Competing Business, San Carlos must engage in the Business of Employer, which is defined in § 1.1 of the Agreement to mean "*professional medical coding*, data entry, third-party billing and accounts receivable services and related activities *for healthcare service providers* including, but not limited to, the following services: Professional medical coding . . . ."  (Emphasis added.)

Importantly, San Carlos must provide the professional medical coding *for healthcare service providers* in order to fall within the definition of the Business of Employer and to constitute a Competing Business in which Kolda may not engage as an employee.

[¶18.]     Here, however, San Carlos does not provide professional medical coding *for* a healthcare service provider; rather it *is* a healthcare provider. San Carlos is also not providing medical coding services for other healthcare service providers; it merely has in-house medical coding staff for its required medical coding. Because San Carlos does not provide the service of medical coding or any other listed service in the Agreement *for* healthcare service providers, it is not engaging in the Business of Employer as defined in § 1.1 of the Agreement. For this reason, San Carlos is not a Competing Business as defined in the Agreement. Therefore, Kolda is not in violation of the non-compete provision of the Agreement via being an employee doing medical coding for San Carlos, and summary judgment should have been granted to Kolda as a matter of law on this count.

***Counts 1 and 4—Kolda's Motion for Summary Judgment***

[¶19.]     In Count 1, DT-Trak claims that Kolda is in breach of the non-disclosure provision of the Agreement because she "is wrongfully using and disclosing DT-Trak's proprietary information, Confidential Information, and trade secrets during her employment with San Carlos" and "will continue to wrongfully use and disclose" such information and trade secrets "unless her employment with San Carlos is terminated." DT-Trak claims in Count 4 that "in the course of her employment with San Carlos, Kolda has used[,] disclosed and otherwise

misappropriated trade secrets belonging to DT-Trak." The confidential and proprietary information and trade secrets that DT-Trak alleges are being wrongfully used, disclosed, and misappropriated are what it terms its "proprietary protocol notes" as well as the DT-Trak-specific experience Kolda gained as a medical coder.

[¶20.] In particular, DT-Trak argues that its protocol notes are trade secrets in that they are based on DT-Trak's specialized knowledge of "provider standards, clinic visit types and locations, data entry and coding details" and that DT-Trak's "knowledge, design, and method of identifying and compiling these details is DT-Trak's proprietary trade secret and confidential information, which [Kolda] would have learned from her training at DT-Trak." DT-Trak asserts that it may petition the court for injunctive relief for actual or mere threatened misappropriation of a trade secret under SDCL 37-29-2 and that misappropriation is at a minimum threatened here.[4]

[¶21.] Kolda asserts that DT-Trak's protocol notes and her experience and knowledge as a medical coder are not trade secrets or proprietary or "Confidential Information" and, even if they were, she did not misappropriate, use, or disclose them. For these reasons, Kolda contends, she is entitled to summary judgment on Counts 1 and 4.

---

4.    DT-Trak also argues that during discovery Kolda refused to turn over certain information relative to her work at San Carlos that she claimed was confidential. However, DT-Trak did not present this claim to the circuit court thereby precluding appellate review.

[¶22.]     The "existence of a trade secret is a mixed question of law and fact.

The legal question is, 'whether the information in question could constitute a trade

secret under the first part of the definition of trade secret' under SDCL 37-29-1(4)

. . . . The factual inquiry involves the remaining subsections of SDCL 37-29-1(4)(i)

and (ii)." *Daktronics, Inc. v. McAfee*, 1999 S.D. 113, ¶ 13, 599 N.W.2d 358, 361

(citation omitted).  SDCL 37-29-1(4) defines a trade secret as:

> information, including a formula, pattern, compilation, program,
> device, method, technique, or process, that:
> (i)      Derives independent economic value, actual or
>          potential, from not being generally known to, and not
>          being readily ascertainable by proper means by, other
>          persons who can obtain economic value from its
>          disclosure or use; and
> (ii)     Is the subject of efforts that are reasonable under the
>          circumstances to maintain its secrecy.

Although the second step of the trade secret analysis is an issue of fact, "a court

may determine a question of fact by summary judgment if it appears to involve no

genuine issues of material fact and the claim fails as a matter of law." *Daktronics*,

1999 S.D. 113, ¶ 16, 599 N.W.2d at 362.  *Daktronics* further clarifies that "the ease

with which information can be developed through other proper means" is relevant to

the factual portion of this inquiry—"if the information can be readily duplicated

without involving considerable time, effort or expense, then it is not a secret." *Id.*

¶ 17, 599 N.W.2d at 362 (citation omitted).  In other words, the compilation of

information or materials "cannot be considered a trade secret" if the compilation

was "within the realm of general skills and knowledge in the relevant industry."

*Weins v. Sporleder*, 1997 S.D. 111, ¶ 21, 569 N.W.2d 16, 21 (cleaned up).

[¶23.]     Although Count 4 of the complaint alleges the existence of a trade secret, Count 1 alleges the existence of a trade secret in addition to proprietary information and "Confidential Information." As such, DT-Trak directs us to the language in the Agreement to guide our analysis. Section 1.4 of the Agreement defines "Confidential Information" as:

> any information or data concerning the Business of Employer that is not generally known and that is proprietary to Employer or that any party is obligated to treat as proprietary, including without limitation: information or material of Employer relating to trade secrets, inventions, improvements, discoveries, "know-how," technological developments, or unpublished writings or works of authorship, or to the materials, apparatus, processes, formulae, plans or methods used in the development, provision, or marketing of Employer's products or services; and information that when received is marked as "proprietary," "private," or "confidential." Any information that Employer reasonably considers as confidential or proprietary, or that Employer treats as confidential or proprietary, will be presumed to be Confidential Information without regard as to whether Employer originally produced or created such information and regardless of how Employer obtained such information.

Further, § 5.1 discusses the protection of said "Confidential Information":

> Employee may not, directly or indirectly, at all times during which Employee is employed by Employer and during the period commencing on the date of the termination of Employee's employment with Employer and ending five years after such date, use Confidential Information in any fashion or manner or disclose Confidential Information to any person not authorized by Employer to receive it, except that Employee may disclose Confidential Information to any governmental or regulatory authority to which he is subject, but only pursuant to subpoena or court order . . . .

[¶24.]     We first address whether a trade secret exists here. Considering the sealed documents in the record that DT-Trak alleges are its trade secrets, including the protocol notes for San Carlos and the experience Kolda gained working at DT-

Trak, it is difficult to conceive how these documents and Kolda's work experience could be trade secrets or further, how Kolda is using, disclosing, or misappropriating any trade secret in a way that would be detrimental to DT-Trak. Based on our careful review of the protocol notes, and considering the breadth of experience Kolda gained from working at DT-Trak, we conclude that neither meet the definition of a trade secret enunciated in SDCL 37-29-1(4)(i). DT-Trak has not produced evidence supporting that this is the type of information that could not be compiled by others with the general skills and knowledge in the medical coding industry. And even if the protocol notes were trade secrets, Kolda does not appear to be at risk of using, disclosing, or misappropriating them in a way that would be detrimental to DT-Trak because the protocol notes, as Kolda emphasizes in her brief, "changed daily[,] if not hourly, were not always customer specific, and are not used by [Kolda] at San Carlos." For this reason, we conclude that Kolda is entitled to summary judgment as a matter of law on Count 4.

[¶25.] With reference to Count 1 and DT-Trak's allegations regarding "Confidential Information" as defined in the Agreement, even viewing the undisputed facts in the light most favorable to DT-Trak and assuming that relevant "Confidential Information" exists, DT-Trak has produced no evidence beyond suspicion that Kolda is "using" and "disclosing" or will continue to use and disclose any "Confidential Information," trade secret, or proprietary information as alleged in Count 1.

[¶26.] Kolda testified at her deposition that in working for San Carlos, she does not "use any of these protocols [referring to the DT-Trak protocol notes]." In

her statement of undisputed material facts before the circuit court, Kolda asserted that DT-Trak "does not have any evidence that [Kolda] violated the terms of the Agreement, but only has suspicions that she may have done so." In support of this assertion, Kolda cites, in part, to the deposition of Jewel Kopfmann, a representative of DT-Trak, in which the following exchange occurred:

Q: So that begs this question, then: Is it your position that [Kolda] has taken from DT-Trak protocols for San Carlos?
A: Yes.
Q: What evidence or proof of that do you have?
A: It's the proprietary information that she's gained through her knowledge of working with DT-Trak.
Q: But the protocol is a written document; right?
A: They are.
Q: And they change? As we discussed earlier, they can change; right?
A: The base of them stay the same. There could be updates.
Q: So it's your testimony by virtue of the fact that [Kolda] coded for a facility, she knows the protocol - -
A: Correct.
Q: - -and has taken it with her because of what she's learned? Is that what you're saying?
A: Correct.
Q: She didn't actually take the document?
A: I don't know if she did or she didn't.
Q: Do you believe that she did?
A: Possibly.
Q: What evidence do you have to support that suspicion?
A: I don't.

DT-Trak's response to this assertion in Kolda's statement of undisputed material facts is without citation to the record and merely provides: "Denied. It is undisputed Kolda is working for San Carlos in violation of her non-compete and other obligations[.]"

[¶27.]     DT-Trak has provided no evidence beyond its suspicion that Kolda has used and disclosed or will continue to use and disclose "Confidential Information,"

trade secrets, or proprietary information to support its claim in Count 1. "Mere speculation and general assertions, without some concrete evidence, are not enough to avoid summary judgment." *North Star Mut. Ins.*, 2015 S.D. 97, ¶ 21, 873 N.W.2d at 63. The record contains no evidence other than DT-Trak's representative's speculation that Kolda has disclosed and used or will use and disclose any DT-Trak trade secret, proprietary information, or "Confidential Information" as defined in the Agreement—and use and disclosure is an integral component of DT-Trak's claim in Count 1. Because DT-Trak's suspicions alone are insufficient to create a dispute of material fact that would avoid summary judgment on Count 1, and because Kolda is entitled to summary judgment as a matter of law on the undisputed material facts present in the record, Kolda is entitled to summary judgment on Count 1.

[¶28.]     We conclude that summary judgment should have been granted to Kolda as a matter of law on Counts 1, 2, and 4. Accordingly, we affirm the circuit court's denial of summary judgment to DT-Trak on Count 2; reverse the circuit court's denial of summary judgment to Kolda on Counts 1, 2, and 4; and remand for further proceedings consistent with this opinion.

[¶29.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.