2001 SD 22

**A. Joseph SEJNOHA and James
J. Sejnoha, a/k/a Jim Sejnoha,
Plaintiffs and Appellants,**

v.

**CITY OF YANKTON, Defendant
and Appellee.**

No. 21465.

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 2001.

Decided Feb. 28, 2001.

City's assessments did not survive County's tax sale. Sejnohas sued City to recover the payments made under the settlement. The trial court granted a directed verdict in favor of City. Sejnoha's appeal and we affirm.

## FACTS AND PROCEDURE

[¶ 2.] Jim Sejnoha is a building contractor in Yankton, South Dakota. His father, Joe, develops real estate, also in Yankton. On October 22, 1988, County conducted an auction of certain parcels of real estate on which County held liens for unpaid real property taxes. County employed Richard Payne, an independent auctioneer, to conduct the auction. At the auction, Payne informed the bidders that City claimed special assessments on certain lots, and that those lots were being sold subject to those assessments. A sheet was distributed to the bidders, listing the assessment on each property. At this auction, Jim, on behalf of himself and Joe, was the high bidder on twenty-five lots. City claimed a total of $124,051.60 in assessments against the lots purchased by Sejnohas. At the time of the bidding, Sejnohas felt City would negotiate the amount it claimed.

[¶ 3.] Shortly after the auction, Jim was approached by Steve Ellis, another bidder at the auction. Jim was invited to a meeting with Ellis and his lawyer to discuss whether City's claimed assessments were legitimate. At that meeting, Jim was informed that Ellis' attorney believed City's assessments were not valid. Jim informed Joe of the contents of the meeting. Together, they decided not to join in Ellis' proposed challenge of the assessments. Joe testified that they did not have the time or the money to take part in Ellis' lawsuit and wanted the title to the property cleared as quickly as possible so it could be developed, dwellings constructed and sold. Therefore, they elected to negotiate a settlement with City. After negotiating for several months, the parties

C.E. Light, Light Law Office, Yankton, for plaintiffs and appellants.

James T. Goetz of Goetz & Klimisch, Yankton, for defendant and appellee.

GILBERTSON, Justice

[¶ 1.] Joe and Jim Sejnoha (Sejnohas) purchased real estate from Yankton County (County) at a tax sale. At the auction, they were informed that the City of Yankton (City) claimed special assessments against a number of lots, including those lots purchased by Sejnohas. After negotiating with City, Sejnohas paid the assessments. Subsequent to that payment, in a separate lawsuit, this Court held that

reached a settlement of $84,189.40 on the special assessments, a $39,862 saving for Sejnohas. The final payment on this settlement was paid on August 31, 1990. Once this amount was paid, City approved their development plans and issued the necessary permits. Sejnohas proceeded to develop and sell the lots.

[¶ 4.] In January of 1995, Joe read about this Court's decision in *Ellis v. City of Yankton*, 526 N.W.2d 124, 127 (S.D. 1995), where we held that pursuant to SDCL 9–43–53, City's assessments did not survive County's tax sale. Sejnohas then contacted an attorney in regards to getting back the $84,189 they had paid City. This lawsuit was filed on October 16, 1995 seeking the rescission of the settlement agreement and return of the sums paid by Sejnohas. The lawsuit initially alleged that Sejnohas had been coerced into the settlement with City. On March 18, 1998, Sejnohas amended that complaint to instead allege fraud and constructive fraud as bases for rescission of the settlement. A jury trial was commenced on January 25, 2000. After Sejnohas had presented their evidence, they moved to amend their complaint to conform to the evidence to allow rescission based on mutual mistake of law. The trial court denied that motion because the evidence failed to establish mistake of law as a ground for rescission. The trial court also granted a directed verdict in favor of City on Sejnohas' fraud allegations. Sejnohas appeal from that judgment raising the following issues:

1. Whether Sejnohas established an evidentiary basis to claim rescission based on mutual mistake of law.

2. Whether the trial court abused its discretion by directing a verdict in favor of the City upon Sejnohas' claim of fraud.

## STANDARD OF REVIEW

[¶ 5.] The denial of a party's motion to amend the pleadings is reviewed under the abuse of discretion standard. *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D.

1987). We review a directed verdict under the following standard:

> A motion for a directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*Veeder v. Kennedy*, 1999 SD 23, ¶ 25, 589 N.W.2d 610, 617 (quoting *Border States Paving, Inc. v. S.D. Dep't of Transp.*, 1998 SD 21, ¶ 10, 574 N.W.2d 898, 901) (additional citations omitted).

## ANALYSIS AND DECISION

[¶ 6.] **1. Whether Sejnohas established an evidentiary basis to claim rescission based on mutual mistake of law.**

[¶ 7.] SDCL 15–6–15(b) provides in relevant part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Under this standard, amendment will be allowed so long as the evidence presented supports the amended pleading. The trial court determined that Sejnohas had failed

to establish a mutual mistake of law and therefore, denied the motion to amend.

[¶ 8.] A mistake of law will void a contract only when there is a "misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law...." SDCL 53–4–10(1). We recently discussed this statute in *Mattson v. Rachetto*, 1999 SD 51, 591 N.W.2d 814. In that case, two attorneys drafted a deed that included an agricultural leaseback provision. After this Court declared a similar leaseback provision void under SDCL 43–32–2, the Mattsons filed for rescission. This Court granted rescission because at the time the contract was signed, both parties were operating under a misapprehension of the law. *Id.* ¶ 25, 591 N.W.2d at 819.

[¶ 9.] Sejnohas note that according to our decision in *Ellis*, City was obviously mistaken as to its ability to collect the assessments. Sejnohas further assert they assumed that City had the legal right to collect the assessments and therefore, they likewise misapprehended the law. Sejnohas claim that because both parties were mistaken as to the law, they are entitled to rescission under SDCL 53–4–10 and our decision in *Mattson*. We do not agree.

[¶ 10.] Sejnohas argument fails because they knew there was a serious legal question as to the ability of City to collect the assessments.[1] They knew, before they purchased the lots, that City claimed assessments against those lots. Joe attended a meeting with Steve Ellis and his attorney shortly after the auction. Ellis informed him that he would likely be challenging City's authority to collect the as-sessments. At the very least, this meeting put Sejnohas on notice that City's claims may not have been valid. Sejnohas had the opportunity to join that lawsuit, and receive its subsequent benefits, but they consciously decided not to, as they did not want to tie up the lots for the duration of a lawsuit.[2] Instead, they chose to negotiate with City, eventually reaching a settlement. It was only after they read the *Ellis* decision that Sejnohas cried foul. This conscious and deliberate decision to negotiate in light of a debatable legal question, and receive the corresponding benefits distinguishes this appeal from *Mattson*. In that case, neither the Mattsons nor the Rachettos were aware that agricultural leases for longer than twenty years were invalid under SDCL 43–32–2.

> [W]here the risk of the existence of some fact or legal principle or the occurrence of some event is consciously considered by both parties in agreeing upon the terms of a compromise agreement, and one of the parties turns out to have been mistaken and to have overestimated or underestimated his chances of being correct, the compromise and settlement is not invalid on the ground of mistake.

15A AmJur2d *Compromise and Settlement* § 33 (1976). Clearly, Sejnohas were aware that the validity of the assessments was in doubt. They negotiated those assessments at substantial savings in time and dollars, assuming the assessments were valid. They simply overestimated their chances of being correct on that assumption.

Persons enter into land transactions for a multitude of reasons. A common in-

---

1. Sejnohas call our attention to no case decided by this Court prior to our decision in *Ellis* which would have provided a definitive answer to this question at the time Sejnohas were contemplating a compromise settlement with City. An examination of *Ellis* shows it was a case of first impression on this statutory question.

2. Final payment on the compromise settlement was made to City on August 31, 1990 thus paving the way for development of the property and ultimate sale to the public by Sejnohas. Our decision in *Ellis* did not become final until February 16, 1995 prior to which the claimed assessments operated as a cloud upon the title to the Ellis property thus precluding its resale to the public.

ducement for such a course of action is the hope of financial gain ... [O]ften the hope for gain fades into the reality of an investment gone sour and a loss incurred. At such a point, it is not the function of the judiciary to require [another] party not responsible for the result, to rescue the disappointed investor from "what may in retrospect appear to have been a bad bargain."

*Estes v. Millea*, 464 N.W.2d 616, 620 (S.D. 1990) (citing *Cook v. Rezek*, 296 N.W.2d 731, 733 (S.D.1980)). *See also Jameson v. Jameson*, 1999 SD 129, ¶ 20, 600 N.W.2d 577, 582. The decision to settle was made solely by Sejnohas knowing they had the option of litigating their disputed claim in court.

[¶ 11.] This Court has consistently indicated it favors the compromise and settlement of disputed claims outside of court. *Lewis v. Benjamin Moore & Co.*, 1998 SD 14, ¶ 8, 574 N.W.2d 887, 888; *Parkhurst v. Burkel*, 1996 SD 19, ¶ 12, 544 N.W.2d 210, 212. Rescission of such compromise agreements is an equitable remedy, which should only be granted in extraordinary circumstances. *Mattson*, 1999 SD 51, ¶ 17, 591 N.W.2d at 818. Additionally, a party seeking equity must have clean hands, and if not, the party "should be left in the position in which the court finds him." *Talley v. Talley*, 1997 SD 88, ¶ 29, 566 N.W.2d 846, 852. Sejnohas consciously disregarded their legal right to challenge the assessments. They received the very benefit they sought from the settlement, the immediate use of the lots. Now, some ten years after the agreement, they claim they are entitled not only to that original benefit received, but also to the settlement monies they paid to receive that benefit. Their hands are hardly clean so as to entitle them to the extraordinary relief they seek. The equities of this case point towards the enforcement of the settlement agreement rather than its rescission.

[¶ 12.] As the evidence introduced by Sejnohas failed to establish that they were entitled to rescission on the grounds of mutual mistake of law, the trial court did not abuse its discretion when it denied the motion to amend their complaint.

**[¶ 13.] 2. Whether the trial court abused its discretion by directing a verdict in favor of the City upon a claim of fraud.**

[¶ 14.] Sejnohas also claim they are entitled to rescission under SDCL 53–4–5 and SDCL 53–4–6 because they were fraudulently induced to settle with city. SDCL 53–4–5 provides in relevant part:

> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
>
> . . .
>
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true. . . .

Sejnohas provided no testimony or other evidence to show that City's assertions were made "in a manner not warranted by the information of the person making it." After Joe and Jim Sejnoha testified, they rested their case. There was no testimony of what City officials knew at the time of the settlement. Neither was there testimony as to whether the statements made by City officials were warranted. It is Sejnohas' burden to prove each element of a fraud claim by a preponderance of the evidence. They cannot carry this burden when they introduced no evidence of whether City's assertions were made in an unwarranted manner.

[¶ 15.] Furthermore, it is well settled that fraud requires a misrepresentation of fact. *Sabhari v. Sapari*, 1998 SD 35, ¶ 17, 576 N.W.2d 886, 892. City's assertion that the assessments were valid liens on the lots was clearly a representation of law. While these representations

were later determined to be incorrect, no claim of fraud can be maintained on a misrepresentation as to what the law would allow or require. 37 AmJur2d *Fraud and Deceit* § 73 (1968).[3] "One who does not withhold or misstate the facts cannot be adjudged guilty of fraud simply because the courts finally decide the law to be other than he claimed it to be. . . ." *Id.* Sejnohas have presented no evidence that City misstated any fact, hence their claim of actual fraud cannot survive.

[¶ 16.] Sejnohas also claim they are entitled to rescission based on constructive fraud, as defined in SDCL 53–4–6. That statute provides that constructive fraud exists: "[i]n any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice. . . ." SDCL 53–4–6(1). To recover on this claim, Sejnohas must establish that a duty existed between themselves and City.

[¶ 17.] Sejnohas have introduced no evidence that would establish such a duty. Sejnohas testified that they simply assumed City had the right to collect the assessments. While Sejnohas concede that they were "at arms length" during their negotiations with City, they claim that a duty existed because they relied on City's assertions. Sejnohas have cited no case law to support this proposition, and the reason is clear. We have often stated that:

> [F]iduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interest and the unprotected party has placed its trust and confidence in the other.

*Daktronics, Inc. v. McAfee,* 1999 SD 113, ¶ 23, 599 N.W.2d 358, 363 (citing *High*

*Plains Genetics Research, Inc. v. J.K. Mill–Iron Ranch,* 535 N.W.2d 839, 842 (S.D.1995) (additional citations omitted)) (alteration in original). City clearly did not undertake to act primarily for Sejnohas' benefit. Even if Sejnohas had placed their trust and confidence in City,

> One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.

*Id.* ¶ 24 (quoting *Ainsworth v. First Bank of South Dakota,* 472 N.W.2d 786, 788 (S.D.1991)). Sejnohas have failed to show any additional circumstances that caused them to relax their vigilance to protect their rights besides their desire to clear the title to the lots as quickly as possible so they could be sold. Because no duty existed between City and Sejnohas, their claim of constructive fraud must fail.

[¶ 18.] We affirm.

[¶ 19.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 20.] SABERS, J., concurs in result.

SABERS, Justice (concurring in the result).

[¶ 21.] I think the majority opinion errs in stating the issues, causing it to confuse the law even though it eventually reaches the right result.

[¶ 22.] 1. The first issue is whether it was error to deny the motion to amend the complaint. It was, because amendment is liberally permitted unless it is prejudicial. Therefore, the trial court and the majority opinion err here because no prejudice would have resulted from granting the motion.

---

3. Moreover, all evidence establishes City believed its legal position to be correct and consistently maintained that position until it was ultimately unsuccessful in this Court.

[¶ 23.] 2. The second issue is whether the trial court erred in denying relief to Sejnoha based on mutual mistake of law.

[¶ 24.] The trial court and majority opinion get this one right even though they do it for the wrong reason, i.e., because they denied the motion to amend the pleading, they now say Sejnoha failed to establish a mutual mistake. In other words, they have the cart before the horse, but at least they have them going into the right barn.

[¶ 25.] 3. The third issue is whether the trial court abused its discretion in directing a verdict for City on a claim of fraud. It did not, and I concur in the result of affirmance.