#25574, #25575-aff in pt & rev in pt & rem-DG

**2010 S.D. 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *
(#25574)

| | |
|---|---|
| MICHAEL ARNOLDY and ANN ARNOLDY, | Plaintiffs and Appellees, |
| v. | |
| DANIEL R. MAHONEY, | Defendant and Appellant, |
| and | |
| DAVID FINNEMAN, CONNIE FINNEMAN, CHAD FINNEMAN, ROCK CREEK FARMS GENERAL PARTNERSHIP, KENCO, INC. D/B/A WARNE CHEMICAL AND EQUIPMENT, CO., DOUG KROEPLIN AG SERVICES, INC. and DON HOLLOWAY, in his representative capacity as Pennington County Sheriff, | Defendants. |

* * * *
(#25575)

| | |
|---|---|
| MICHAEL ARNOLDY and ANN ARNOLDY, | Plaintiffs and Appellees, |
| v. | |
| DAVID FINNEMAN, CONNIE FINNEMAN, CHAD FINNEMAN, ROCK CREEK FARMS GENERAL PARTNERSHIP, | Defendants and Appellants, |
| and | |
| KENCO, INC. D/B/A WARNE CHEMICAL AND EQUIPMENT, CO., DOUG KROEPLIN AG SERVICES, INC., DANIEL R. MAHONEY and DON HOLLOWAY, in his representative capacity as Pennington County Sheriff, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

ARGUED OCTOBER 6, 2010

OPINION FILED **12/01/10**

\* \* \* \*

HONORABLE A. PETER FULLER
Judge

\* \* \* \*

ROBERT R. SCHAUB of
Sundall, Schaub & Fox, P.C.
Chamberlain, South Dakota

Attorneys for appellees
(#25574, #25575).


STAN H. ANKER of
Anker Law Group, P.C.
Rapid City, South Dakota

Attorneys for appellant
(#25574).


BRIAN UTZMAN of
Smoot & Utzman, P.C.
Rapid City, South Dakota

Attorneys for appellant
Rock Creek Farms (#25575).


JAMES P. HURLEY of
Bangs, McCullen, Butler,
  Foye & Simmons, L.L.P.
Rapid City, South Dakota

Attorneys for appellants
Finnemans & Rock Creek
Farms (#25575).

GILBERTSON, Chief Justice

[¶1.]      Michael and Ann Arnoldy each purchased assignments of judgments against David and Connie Finneman.  They used the judgments to redeem land owned by the Finnemans that had been foreclosed.  Daniel Mahoney also purchased judgments that he used to redeem the land from Michael.  Arnoldys filed this separate declaratory judgment action challenging the validity of the judgments Mahoney used to redeem from them.  The trial court granted summary judgment in favor of Arnoldys.  Mahoney and Finnemans each appealed.  For purposes of this opinion, the appeals are consolidated.  We affirm in part and reverse and remand in part for further proceedings.

## FACTS

[¶2.]      In 2000, FarmPro Services, Inc. commenced foreclosure on agricultural land the Finnemans owned.[1]  A final judgment was issued in 2003 in favor of FarmPro for $1,080,681.02 plus interest.  Executions on the judgment were made in Meade and Pennington counties in February 2006.  FarmPro purchased the land at a sheriff's sale on May 10, 2006, for $1,439,130.30 and assigned its certificate of sale to Dr. Lee Ahrlin.  In April 2007, Michael Arnoldy purchased an assignment of a judgment against Finnemans in favor of Daimler-Chrysler and another judgment against Finnemans in favor of Farmers Union Oil, Inc.  He used these judgments to redeem the foreclosed land from Ahrlin in May 2007.  Michael paid Ahrlin $1,765,232.50 plus $2,000 as a contingency.

---

1.      Chad Finneman, son of David and Connie, is also a named defendant.

[¶3.] Meanwhile, Finnemans formed a general partnership, Rock Creek Farms, with investor and farmer Warrenn Anderson. A mutual acquaintance, Daniel Mahoney, introduced Finnemans and Anderson. Using a quitclaim deed, Finnemans transferred their interests in the property foreclosed by FarmPro to Rock Creek Farms. On May 10, 2007, Anderson paid the Sheriff $822,000 to extend the owners' redemption period for one year. During the extension period, Michael held a Certificate of Redemption, which was the prevailing interest in the land.

[¶4.] On May 6, 2008, David Finneman confessed judgment to Kenco, Inc. d/b/a Warne Chemical and Equipment, Co. (Kenco) for $622,558.84. Mahoney purchased the judgment for $10,000 on May 7, 2008. Finneman also confessed judgment to Doug Kroeplin Ag Services, Inc. (Kroeplin) for $254,731.59, which Mahoney purchased for $5,000 on May 7, 2008. The complaints and assignments for both judgments were prepared by attorney Jim Jeffries, whose fees were paid by Rock Creek Farms. On May 7, 2008, Mahoney deposited $1,219,734.29 with the Sheriff plus a $2,000 contingency to redeem from Michael using the Kenco and Kroeplin judgments.

[¶5.] After Mahoney redeemed, Ann Arnoldy, Michael's sister, redeemed from Mahoney in July 2008. She used two judgments she had purchased against Finnemans in favor of US Bank Corporation Equipment Finance, Inc. and Pioneer Garage, Inc. Finnemans assert that the owners' final redemption was made on September 12, 2008, by Rock Creek Farms for $1,280,000.00. The foreclosure proceedings have not concluded at the time of this opinion.

[¶6.]        On October 1, 2008, Michael and Ann filed a declaratory judgment action to have the Kenco and Kroeplin judgments declared void under SDCL 21-26-3, the confession of judgment statute. Arnoldys later amended the complaint, alleging that Finneman confessed the judgments in an attempt to delay or defraud Arnoldys, as creditors of Finneman, in violation of SDCL 54-8-1. The complaint also alleged Mahoney participated in "hindering" Arnoldys' attempt to redeem.[2]

[¶7.]        While conducting discovery, Arnoldys requested documents that Defendants claim are privileged under either the attorney-client privilege or work-product doctrine. When Defendants did not produce the requested discovery, Arnoldys made various motions to the court, including allegations that the discovery sought was covered by the crime-fraud exception to the attorney-client privilege. Defendants filed a motion for a protective order under SDCL 15-6-26(c). The trial court instructed counsel for Mahoney and Finnemans to turn over their client files related to the FarmPro and current litigation for in camera review. Defendants complied and also submitted a privilege log designating which privilege they believed applied to each document. The trial court indicated it would be complying with the in camera review procedure this Court outlined in *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, 2009 S.D. 69, ¶ 49, 771 N.W.2d 623, 637.

---

2.    In addition to David, Connie and Chad Finneman, Daniel Mahoney, and Rock Creek Farms, there were other named defendants who were either dismissed or did not appeal. They include Kenco, Inc. d/b/a Warne Chemical and Equipment, Co., Doug Kroeplin Ag Services, Inc., and Don Holloway, in his representative capacity as Pennington County Sheriff. The appealing parties will collectively be referred to as "Defendants."

[¶8.]    All parties filed motions for summary judgment in the declaratory judgment action.  The trial court relied on documents from defense counsel's client files to make findings[3] and grant summary judgment in Arnoldys' favor.  The trial court did not make a ruling as to what documents in the files were privileged.  Instead, the trial court placed parts of the files under seal.  Defendants were not given notice that the trial court was going to use documents from their files to grant summary judgment against them and were not given an opportunity to make a record with the trial court regarding their client files.  Moreover, as a consequence of the trial court's procedure, counsel for the parties were forced to brief and argue

---

3.    The trial court entered what it declared to be findings to support its summary judgment.  We have previously held that in summary judgment proceedings the entry of findings are unnecessary and give the successful litigant no evidentiary advantage before this Court as part of an appeal.  They are in essence a procedural nullity which do no more than explain the rationale of the trial court.

> [F]indings of fact and conclusions of law are unnecessary in a summary judgment action.  SDCL 15-6-52(a); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 211, 157 N.W.2d 19, 21 (1968).  "Since summary judgment presupposes there is no genuine issue of fact, findings of fact and conclusions of law are unnecessary." *Wilson*, 83 S.D. at 211, 157 N.W.2d at 21.  The fact "[t]he trial court chose to enter findings of fact and conclusions of law," *id.*, and [a party] failed to object to the findings and conclusions or propose her own does not limit our review.  "[W]e are not bound by the factual findings of the trial court and must conduct an independent review of the record." *Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D. 1988) (citations omitted). . . . Therefore, our scope of review on appeal is not under the 'clearly erroneous' doctrine, but rather under the strict standards attendant upon entry of summary judgment as delineated in *Wilson*.

*Piner v. Jensen*, 519 N.W.2d 337, 339 (S.D. 1994).

this case before this Court without knowing what documents from the client files were used by the trial court to find fraud.

[¶9.] The sealed records contain correspondence Mahoney's counsel had with his client regarding his deposition and other matters related to litigation and redemption. Records also showed various attorneys' bills. A letter from Mahoney to Anderson, Finneman, and their respective counsel indicated that Mahoney wished to be paid his finder's fee. There was also other correspondence among counsel regarding strategy in the litigation and redemption proceedings.

[¶10.] The trial court's findings from the November 20, 2009 hearing granting summary judgment were not reduced to writing, but a copy of the transcript was attached to the signed order granting summary judgment on January 22, 2010.[4]

---

4. The trial court made the following oral "findings" at the November 20, 2009, hearing, copied from the transcript:

- As established by the depositions of the Kroeplin people and the Kenco people, Jim Hurley at all times pertinent hereto was representing Mr. Finneman; Alan Smoot at all times pertinent hereto was representing Mr. Anderson, which then evolved into the Rock Creek Farms partnership;

- Jim Hurley and Alan Smoot, or one of them, contacted the Kenco and Kroeplin people. They identified the fact that Mr. Finneman owed them money;

- The record indicates that these debts were at least 7 and 8 years old; that the statute of limitations at 15-2-13.1 is a 6-year statute of limitation. Those debts were dead, gone. The record indicates they were written off by both of these people;

- That the defendants Finneman, Rock Creek General Partnership, and in regard to that, Mr. Anderson, they revived those debts that were legally nonexistent;

(continued . . .)

_____

(continued . . .)

- That the defendants Finneman and Rock Creek Farms retained Jim Jeffries to represent them in reviving these judgments – or these bills;

- That the agreement was made by these defendants with Kenco to revive $622,500 and change debt for the sum of $10,000;

- That they arranged for Mr. Kroeplin to, by reviving these bills, to create a debt of $264,700 and change, totaling 900-plus thousand dollars of new debt that all was dead at the time by a submittal of a $50 bill or check to revive these bills, these debts;

- That as established, Mr. Mahoney was a strawman; that Mr. Mahoney apparently was doing this for some kind of a finder's fee of $17,000, but this record indicates that Finneman and Anderson and Rock Creek apparently don't believe it is because at least as of May of '09, Mr. Mahoney still doesn't have a 1099 for those $10,000 or $17,000 that he claims;

- That he, through his deposition taken March 20th, was quite clear in his testimony, but through the advice and counsel of his attorney, he filed paperwork after being properly coached as to what to say to modify his deposition;

- That the February 4, 2008 finder's fee arrangement letter from Mahoney to Hurley and Finneman and Warren Anderson apparently has never been really acknowledged, at least according to this;

- That it's clear that Jim Jeffries had very little, if any, contact whatsoever with the Plaintiffs Kroeplin in the suit against Finneman and in the Kenco vs. Finneman case, and there's no doubt that Jeffries, by the amount of the bill and whatnot, not being paid by either of those plaintiffs, was paid by Rock Creek farms for the benefit apparently;

- Further, that there was even a question about checking with the Rock Creek records to be sure that Jim Jeffries attorney's fees couldn't be traced to Rock Creek. "David will

(continued . . .)

Specifically, the trial court determined that the debts that were the basis of the Kenco and Kroeplin judgments exceeded the six-year statute of limitations and defendants "revived" the debts by paying the creditors fifty dollars. The trial court found that Rock Creek Farms retained Jim Jeffries to address the Kenco and Kroeplin debts, and that "Jeffries had very little, if any, contact whatsoever with [Kroeplin and Kenco]." The trial court found that Mahoney was a strawman for Finnemans, Anderson, and Rock Creek Farms, although the Defendants have failed to recognize his claimed "finder's fee" by giving him the appropriate tax form.[5] There was also a finding that Mahoney had been coached to modify statements he made in his deposition. As a result of its findings, the trial court held that the Kenco and Kroeplin judgments did not meet the requirements of SDCL 21-26-3 concerning confessions of judgments. Further, the trial court held that Defendants committed fraud and deceit, and therefore the Kenco and Kroeplin judgments Mahoney used to redeem the land from foreclosure were void.

---

(continued . . .)

need to pay some attorney's fees for Jim Jeffries, represents Kenco." Anyway, that's October 14th, Smoot to Hometown Solutions, is the specific reference;

- Also that – that is also in the April 4, 2009 letter to Mr. Hurley, "We need to examine Rock Creek Farms checking account, see if monies were used to fund Daniel Mahoney's acquisition."

5. Mahoney claims he was supposed to be paid a finder's fee for securing an investor to help Finnemans. There is a dispute in the record as to the amount he was to be paid, ranging from $2,000 to $17,000, as well as who would pay the fee and if it has since been paid.

[¶11.] Mahoney and Finnemans appealed in separate actions. Of the issues they raised, we address the following as dispositive:

1. Whether Arnoldys have standing to challenge the validity of Finneman's confessed judgments.

2. Whether the trial court erred when it used privileged documents submitted for in camera review to rule on the motions for summary judgment.

3. Whether the trial court erred in granting summary judgment based on fraud and deceit.

4. Whether the trial court erred in holding as a matter of law that the Kenco and Kroeplin judgments were void for failure to satisfy the requirements of SDCL 21-26-3.

## STANDARD OF REVIEW

[¶12.] Whether a party has standing to maintain an action is a question of law reviewable by this Court de novo. *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 38, 709 N.W.2d 824, 836; *Fritzmeier v. Krause Gentle Corp.*, 2003 S.D. 112, ¶ 10, 669 N.W.2d 699, 702 (citing *Winter Bros. Underground Inc. v. City of Beresford*, 2002 S.D. 117, ¶ 13, 652 N.W.2d 99, 102).

[¶13.] Normally, this Court reviews a trial court's discovery orders under an abuse of discretion standard. *Acuity*, 2009 S.D. 69, ¶ 47, 771 N.W.2d at 636 (citing *Maynard v. Heeren*, 1997 S.D. 60, ¶ 5, 563 N.W.2d 830, 833). "When we are asked to determine whether the circuit court's order violated a statutory privilege, however, it raises a question of statutory interpretation requiring de novo review." *Id.*

[¶14.] When a trial court grants summary judgment, this Court will affirm only if all legal questions have been decided correctly and there are no genuine

issues of material fact. *Lawrence Cnty. v. Miller*, 2010 S.D. 60, ¶ 9, 786 N.W.2d 360, 365 (citing *De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Devel. Co., Inc.*, 2010 S.D. 15, ¶ 16, 779 N.W.2d 148, 154-55). All reasonable inferences drawn from the facts are viewed in favor of the nonmoving party. *Id.* The moving party has the burden of showing an absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* The trial court's conclusions of law are reviewed de novo. *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 16, 714 N.W.2d 884, 891.

## ANALYSIS AND DECISION

[¶15.]    **1.    Whether Arnoldys have standing to challenge the validity of Finneman's confessed judgments.**

[¶16.]    Finnemans argue that Arnoldys do not have standing to collaterally attack the validity of the confessed judgments. They contend that Arnoldys failed to allege or show that the court that accepted the confessed judgments lacked jurisdiction. Finnemans also assert that Arnoldys failed to file a direct appeal against the judgments. Further, Finnemans argue that Arnoldys do not have standing because they did not suffer any injury in the redemption process. Finnemans' lack of injury argument is based on their calculations that Arnoldys had been reimbursed for the cost of their purchased judgments.

[¶17.]    Mahoney argues that Arnoldys could only attack the confessions of judgments in the proceeding in which they were confessed, not in a declaratory judgment action. Mahoney also argues that only Finneman could object to the entry of the judgments as he was the obligor and therefore Arnoldys do not have standing to object.

[¶18.] "Standing is determined by the status of the party seeking relief, not the issues presented." *D.G. v. D.M.*, 1996 S.D. 144, ¶ 22, 557 N.W.2d 235, 239; *see also Kehn v. Hoeksema*, 524 N.W.2d 879, 881 (S.D. 1994) ("Since Hoeksema and Johnson are defendants, their standing is to be determined from the defendants' perspective."). In this case, Arnoldys are plaintiffs, and their standing is determined from the plaintiff's perspective.

[¶19.] Standing is established through being a "real party in interest" and is controlled by statute. SDCL 15-6-17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." "The real party in interest requirement for standing is satisfied if the litigant can show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *D.G.*, 1996 S.D. 144, ¶ 22, 557 N.W.2d at 239 (additional citations omitted); *see also Winter Bros. Underground Inc.*, 2002 S.D. 117, ¶ 13, 652 N.W.2d at 102 (citing *Agar Sch. Dist. No. 58-1 v. McGee*, 527 N.W.2d 282, 284 (S.D. 1995)); *Mahan v. Avera St. Luke's*, 2001 S.D. 9, ¶ 12, 621 N.W.2d 150, 154 (citing *Parsons v. S.D. Lottery Comm'n*, 504 N.W.2d 593, 595 (S.D. 1993)).

[¶20.] In *Kehn*, Hoeksema granted an option to purchase land to Kehn Ranch Inc. and its heirs, successors and assigns. 524 N.W.2d at 880. Hoeksema later sold the property to Johnson without notifying Kehn Ranch, which had recently been dissolved. *Id.* The assignee of Kehn Ranch brought a declaratory judgment action against Hoeksema and Johnson. *Id.* This Court held that Hoeksema and Johnson had standing to challenge the transfer of the option from Kehn Ranch to its

assignee. *Id.* "Hoeksema and Johnson have a land sale contract which is directly affected by the outcome of this litigation." *Id.* at 881.

[¶21.] Similarly, this case involves a land ownership transaction that will be directly affected by the outcome of this declaratory judgment action. Michael held a Certificate of Redemption for the land after he redeemed from Ahrlin. *See* SDCL 21-52-25 ("Upon making each redemption the sheriff shall execute to the person making the redemption a certificate setting forth the fact of such redemption . . . "). A holder of a Certificate of Redemption has equitable title to the land subject to the foreclosed owner's right of redemption. *Wood v. Conrad*, 2 S.D. 405, 50 N.W. 903, 904 (1892). *See also Bennett v. Wilson*, 122 Cal. 509, 512-13, 55 P. 390 (1898) (explaining that the plaintiff, who redeemed from the purchaser, "succeeded to the rights of the purchaser" and that "the purchaser acquires an equitable estate in the lands . . . and during [the] redemption period the statute regards the purchaser as the owner in equity.").

[¶22.] But for Mahoney's redemption with the Kenco and Kroeplin judgments, Michael would have received a Sheriff's Certificate to the land at the end of the redemption period. In other words, if Mahoney had not redeemed from Michael, then Michael would have been entitled to the Sheriff's Certificate. *State ex rel. Hale v. McGee*, 38 S.D. 257, 160 N.W. 1009, 1010 (1917). The Sheriff's Certificate is also considered an equitable interest in land. *Bennett*, 122 Cal. at 513 ("[A] sheriff's certificate of sale of real property is the evidence of the equitable interest which the purchaser has in the land, and is an instrument whereby an interest or title is created." (citing *Foorman v. Wallace*, 75 Cal. 552, 17 P. 680

(1888))). If Mahoney's redemption is found to be invalid, then Michael may be entitled to the Sheriff's Certificate, depending on other determinations to be made in the foreclosure proceedings. The Kenco and Kroeplin judgments were the means Mahoney used to redeem. If those judgments were obtained by fraud, then Michael has suffered a real injury, namely loss of the Sheriff's Certificate. Because Michael held a Certificate of Redemption and therefore an equitable interest in the land, he has standing to challenge proceedings involving that land.

[¶23.] Whether the two judgments are valid will also affect Ann's status in the pending FarmPro foreclosure proceedings. She also had a Certificate of Redemption in the land, having redeemed after Mahoney. Depending on whether the judgments are valid, Ann's cost to redeem, in addition to other expenses she incurred, may change. *See* SDCL 21-52-19 (providing the amount that must be paid in a successive redemption by a junior lienholder). Whether the judgments are valid may also affect the amount Ann was paid when yet another party redeemed from her, which is part of the financial determinations the trial court in the foreclosure proceedings will decide. *Id.* Therefore, Ann has standing because she could suffer a financial injury in the foreclosure proceedings as a result of the outcome in this declaratory judgment action.

[¶24.] Finnemans argue Arnoldys have not been financially injured by the confession of the Kenco and Kroeplin judgments, and with no injury, they do not have standing. However, the foreclosure proceedings have not ended and, depending on the outcome of this action, could cause financial harm to Michael and Ann. Additionally, even if the Arnoldys have not lost money in this redemption

process, they had an interest in retaining physical ownership of the foreclosed land as former certificate holders. This potential loss is an interest sufficient to constitute an injury and give them standing.

[¶25.] Defendants also argue that Arnoldys do not have standing because Arnoldys failed to allege a jurisdictional defect for the proceedings where the judgments were confessed. However, "[a] consent judgment is subject to collateral attack when the facts demonstrate that the judgment or settlement was entered into fraudulently, collusively or in bad faith." *Wolff v. Royal Ins. Co. of Am.*, 472 N.W.2d 233, 235 n.1 (S.D. 1991) (citing *Metcalf v. Hartford Accident & Indem. Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964)). A court does not have jurisdiction if the information given to it is fraudulent and the judgment would be void. *See Bennett*, 122 Cal. at 513-14 ("A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless." (citing Freeman on Judgments, § 117)). Arnoldys' legal position was that the confessions of judgments were obtained through fraud and collusion. Based on this belief, Arnoldys filed this declaratory judgment action to have the judgments voided. If Arnoldys are correct, then the trial court that presided over the confessions of judgments would not have had jurisdiction. Accordingly, Arnoldys have alleged a jurisdictional defect in the confession proceedings.

[¶26.] Defendants next argue that Arnoldys do not have standing to challenge the judgments in a separate proceeding. Instead, they contend the judgments should have been challenged in either the confession proceeding or the

-13-

foreclosure proceeding where the judgments were used to redeem.[6] Arnoldys claim, and the record supports, that they did not receive notice of the confession proceedings, and therefore did not have the opportunity to object, file a direct appeal, or present any evidence to that court. In a similar case, the California Supreme Court found that a party in Arnoldys' position had standing. *Bennett*, 122 Cal. at 513-14. It reasoned, "Unless [the Arnoldys] can [challenge the validity of the judgment] by bill in equity, [they] can never have relief, but must surrender the rights acquired as a redemptioner under a valid judgment to a junior redemptioner who holds a judgment alleged to be void[.]" *Id.* at 514. Arnoldys were unable to challenge the confession of judgments because they had no notice. A declaratory judgment action would allow them the opportunity to have the judgments declared void, if they could prove it. The California Supreme Court held that "the law should give to the holder of [an equitable] estate in land some appropriate proceeding by which to protect it against the operation . . . of a void judgment." *Id.* at 513-14.

[¶27.]    Additionally, SDCL 21-24-1 provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or

---

6.    Defendants are correct that the judge assigned to the foreclosure proceedings, Judge Tice, could have had jurisdiction over this action. SDCL 21-52-16 requires that a redemptioner who plans to redeem give written notice to the person from whom he seeks to redeem, along with a copy of the judgment to be used. However, there is no indication in the record provided to this Court that Arnoldys did in fact have notice of either judgment before they were used to redeem. Assuming they did not have notice, filing this declaratory judgment action was their only available avenue for challenging the validity of the Kenco and Kroeplin judgments.

decree is prayed for[.]" SDCL 21-24-1 must be read in conjunction with SDCL 15-6-57, which provides in part that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *See Dan Nelson, Auto., Inc. v. Viken*, 2005 S.D. 109, ¶ 18, 706 N.W.2d 239, 246 (reading the statutes together to allow declaratory judgment action to determine the applicability of taxes). Additionally, "[w]e do not consider whether the party filing the challenge 'will ultimately be entitled to any relief but whether he has the legal right to seek judicial redress for his grievance.'" *D.G.*, 1996 S.D. 144, ¶ 22, 557 N.W.2d at 239 (quoting *In re Baby Boy K.*, 1996 S.D. 33, ¶ 14, 546 N.W.2d 86, 90). In examining South Dakota statutes and case law, it is apparent that a declaratory judgment action is not precluded even when there may be jurisdiction in another action.

[¶28.] Finnemans compare this case to *Lewis & Clark Rural Water System, Inc. v. Seeba*, 2006 S.D. 7, 709 N.W.2d 824. In that case, this Court held that a plaintiff attempting to assert a statutory setback requirement for a proposed pipeline lacked standing because there was no actual or threatened injury to his property; the pipeline would instead encroach on the property rights of his neighbors who had consented to its placement. *Id.* ¶ 39, 709 N.W.2d at 836. Finnemans claim that the Arnoldys, like the plaintiffs in *Lewis & Clark*, are attempting to assert the property rights of another because they were not a party to the Kenco or Kroeplin collection proceedings, nor were they in privity with any party who was. This case, however, is distinguishable. We found the plaintiff in *Lewis & Clark* had not suffered any actual injury and did not fall within the

statutory parameters to suffer injury in the future. In this case, Arnoldys have shown sufficient potential injury to maintain this action. Additionally, no fraud was alleged in *Lewis & Clark*, and all parties were a part of the original proceeding.

[¶29.] A helpful analogy is provided by our cases examining standing of unsuccessful bidders for construction projects. Generally, when bidders are unsuccessful, they do not have standing to challenge the bidding decision. *Winter Bros. Underground Inc.*, 2002 S.D. 117, ¶ 15, 652 N.W.2d at 103 (citing *Tri-State Milling Co. v. Bd. of Cnty. Comm'rs*, 75 S.D. 466, 468, 68 N.W.2d 104, 105 (1955)). However, a limited exception has been adopted by this Court. "Standing has been bestowed in cases of 'fraud, corruption or acts undermining the objective and integrity of the bidding process.'" *H & W Contracting, L.L.C. v. City of Watertown*, 2001 S.D. 107, ¶ 12, 633 N.W.2d 167, 172 (citing *Conn. Assoc. Builders and Contractors v. City of Hartford*, 251 Conn. 169, 740 A.2d 813, 821 (1999)). We think it an appropriate analogy to the general rule against collateral attack of judgments, as presented in this case.[7] If there is fraud or deceit in the redemption process, a third party involved in the process and affected by the validity of judgments should have the ability to challenge the judgments.

[¶30.] We conclude the Arnoldys had standing to challenge the validity of the Kenco and Kroeplin judgments in this declaratory judgment action because they can

---

7. The exception extending standing to disappointed bidders allows suit on behalf of the public's interest as taxpayers. *Winter Bros. Underground Inc.*, 2002 S.D. 117, ¶ 17, 652 N.W.2d at 103. Although the redemption and foreclosure process primarily involves private parties, the public still has an interest in maintaining integrity in the proceedings, particularly if the government is a lienholder, as it is in this case.

each show that they have suffered some actual or threatened injury as a result of Defendants' conduct. We affirm the trial court on this issue.

[¶31.] **2. Whether the trial court erred when it used privileged documents submitted for in camera review to rule on the motions for summary judgment.**

[¶32.] The trial court used documents Defendants claim are privileged to grant summary judgment. When the trial court ordered Defendants' counsel to turn over their entire client files, it told the parties, "If I'm going to divulge anything in your files, I will be advising you of what I plan on divulging and you will then be able to have access to the record to make a further record at that time."[8] The trial court indicated that it would be following the procedure set forth by this Court in *Acuity*. 2009 S.D. 69, 771 N.W.2d 623. Defendants allege that the trial court violated the *Acuity* standard.

---

8. Arnoldys motioned for the trial court to review Defendants' files in camera based on the crime-fraud exception to the attorney-client privilege. However, the trial court specifically stated at the hearing, "I am not addressing the fraud exception to the attorney-client privilege." The trial court did not give any reason as to why it was ordering the production of the files. In the future, when a trial court is ordering counsel to produce files for in camera review, it must provide counsel the reason so that they may form a specific objection.

[¶33.] The attorney-client privilege is set forth at SDCL 19-13-3.[9] The client is the holder of the privilege. SDCL 19-13-4; *State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984). "Privileges created by statute are to be strictly construed to avoid suppressing otherwise competent evidence." *Acuity*, 2009 S.D. 69, ¶ 57, 771 N.W.2d at 639 (citing *Catch the Bear*, 352 N.W.2d at 646-47). "This Court has previously stated that the preferred procedure for handling privilege issues is to allow for an in camera review of the documents." *Id.* ¶ 49, 771 N.W.2d at 637.

[¶34.] The trial court violated the standard this Court announced in *Acuity*. The trial court did not provide the parties with a reason why it was conducting the in camera review. Then, the trial court used documents from the files to grant summary judgment without first telling the parties. No findings or rulings were made regarding whether any privilege applied to any part of the files. Defendants did not have an opportunity to make a further record regarding privilege issues. The trial court erred in handling the in camera review of Defendants' client files.

9.      SDCL 19-13-3 provides:

>       A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>           (1) Between himself or his representative and his lawyer or his lawyer's representative;
>           (2) Between his lawyer and the lawyer's representative;
>           (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
>           (4) Between representatives of the client or between the client and a representative of the client; or
>           (5) Among lawyers and their representatives representing the same client.

[¶35.] At oral argument, Arnoldys argued Defendants waived all privileges because they never objected, and therefore it was irrelevant if *Acuity* was followed. Defendants objected during discovery to Arnoldys' request for privileged documents in their client files. Defendants properly filed a motion for a protective order under SDCL 15-6-26(c) with the trial court. Defendants also submitted a privilege log with their files designating which privilege they believed applied to each document in their files, either attorney-client or work product. Although there was not a verbal objection at a hearing, Defendants' objection to producing their entire client records was sufficient and clear to both the trial court and Arnoldys' counsel. Furthermore, the trial court specifically stated that it was not ordering the in camera review of the records in order to address any waiver issue.

[¶36.] **3. Whether the trial court erred in granting summary judgment based on fraud and deceit.**

[¶37.] In their original complaint, Arnoldys alleged that Defendants violated SDCL 21-26-3 regarding the requirements for confessing judgments. Their amended complaint also alleged violation of SDCL 54-8-1, which prohibits property transfers with the intent to delay or defraud creditors. Arnoldys' motion for summary judgment argued that the "confessions of judgment were fraudulent and collusive." In their motion for summary judgment, Arnoldys argued that all transfers after and including the Mahoney redemption are invalid due to the use of the alleged fraudulent judgments. The trial court granted summary judgment, finding Defendants had committed statutory fraud and deceit, in addition to violating SDCL §§ 21-26-3 and 54-8-1. Arnoldys never specifically argued the

Defendants committed fraud or deceit as codified at SDCL §§ 20-10-2, 53-4-5, and 53-4-6.

[¶38.]     "Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." *Ehresmann v. Muth*, 2008 S.D. 103, ¶ 20, 757 N.W.2d 402, 406 (citing *Laber v. Koch*, 383 N.W.2d 490, 492 (S.D. 1986)); *Fritzmeier*, 2003 S.D. 112, ¶ 26, 669 N.W.2d at 705 (quoting *Sporleder v. Van Liere*, 1997 S.D. 110, ¶ 13, 569 N.W.2d 8, 11). "[W]hen there is a reasonable doubt on whether a genuine issue of material fact exists, the doubt should be resolved against the movant." *Ehresmann*, 2008 S.D. 103, ¶ 16, 757 N.W.2d at 405 (citing *Berbos v. Krage*, 2008 S.D. 68, ¶ 17, 754 N.W.2d 432, 437). We have also held that "cases of fraud and deceit require a higher degree of specificity in order to avert summary judgment." *Schwaiger v. Mitchell Radiology Assocs., P.C.*, 2002 S.D. 97, ¶ 14, 652 N.W.2d 372, 378 (citing *Bruske v. Hille*, 1997 S.D. 108, ¶ 11, 567 N.W.2d 872, 876 (stating specific material facts must be presented in order to prevent summary judgment on fraud and deceit claims)).

***Delaying or Defrauding Creditors***

[¶39.]     Arnoldys allege a violation of SDCL 54-8-1, which provides:

> Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, *with intent to delay or defraud* any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.

(emphasis added). The trial court held SDCL 54-8-1 was satisfied by the undisputed material facts. A violation of this statute requires the intent to delay or

defraud. SDCL 54-8-4 provides that "in all cases under the provisions of this chapter . . . the question of fraudulent intent is one of fact and not of law." *See Kary v. Kary*, 318 N.W.2d 334, 338 (S.D. 1982) ("In order to establish that a conveyance is fraudulent, *actual* intent to defraud must be shown."). The trial court pointed to no specific portion of the record which establishes as a matter of uncontested material fact that Defendants had the requisite statutory intent. Whether Arnoldys were delayed or defrauded is also unclear. Thus, the trial court erred when it granted summary judgment.[10]

***Actual and Constructive Fraud***

[¶40.] At the summary judgment motions hearing, the trial court determined that the provisions of SDCL §§ 53-4-5 and 53-4-6 were established by the undisputed material facts. SDCL 53-4-5 defines actual fraud as follows:

---

10. Furthermore, the trial court does not appear to have considered how the statutes on which it granted summary judgment interact with each other. In *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 116-17 (S.D. 1977), this Court discussed how actual fraud, constructive fraud, and deceit relate:

> An instruction on constructive fraud, as defined in SDCL 53-4-6, should not be given in a tort action for deceit brought under SDCL [ch.] 20-10. SDCL [ch.] 53-4 makes contracts obtained by duress, fraud, undue influence, or mistake voidable. SDCL 53-4-5 defines actual fraud which makes a contract voidable; SDCL 53-4-6 defines constructive fraud which makes a contract voidable. The tort action of deceit is based only upon actual fraud as defined by SDCL 20-10-2, and requires scienter or its equivalent. Constructive fraud, which requires no fraudulent intent, is not a basis for deceit under SDCL [ch.] 20-10, nor under common law. Although actual fraud may be the basis of tort actions and contract actions, constructive fraud is the basis only for actions for the avoidance of contracts.

(internal citations omitted).

> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, *with intent to deceive another party* thereto or to induce him to enter into the contract:
>> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
>> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;
>> (3) The suppression of that which is true by one having knowledge or belief of the fact;
>> (4) A promise made without any intention of performing it; or
>> (5) Any other act fitted to deceive.
>
> *Actual fraud is always a question of fact.*

(emphasis added).

[¶41.]     SDCL 53-4-6 provides the following definition of constructive fraud:

> Constructive fraud consists:
>> (1) In any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
>> (2) In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

[¶42.]     This Court has held that "it is well settled that fraud requires a misrepresentation of fact." *Sejnoha v. City of Yankton*, 2001 S.D. 22, ¶ 15, 622 N.W.2d 735, 739 (citing *Sabhari v. Sapari*, 1998 S.D. 35, ¶ 17, 576 N.W.2d 886, 892). Whether a statement implies a false assertion of objective fact is a question of fact to be decided by a jury. *Paint Brush Corp., Parts Brush Div. v. Neu,* 1999 S.D. 120, ¶ 50, 599 N.W.2d 384, 397. The trial court did not conclude as a matter of law based on uncontested facts that Defendants had the requisite intent to defraud under SDCL 53-4-5. The trial court did not conclude by similar analysis that Defendants breached a duty under SDCL 53-4-6 or that they committed an act or

-22-

omitted an act which the law specially declares to be fraudulent. *See Sejnoha*, 2001 S.D. 22, ¶ 16, 622 N.W.2d at 740 ("To recover on this claim [of constructive fraud], [plaintiffs] must establish that a duty existed between themselves and [defendant].").

[¶43.]     The trial court erred as a matter of law in finding fraud as the basis for granting summary judgment. There remain disputed material facts regarding the alleged fraudulent behavior of Mahoney and Finnemans. There is a dispute as to whether Finnemans paid any money on the debts owing to Kenco and Kroeplin, thereby affecting the statute of limitations. Whether the judgments are fraudulent remains a question of material fact. The communications submitted to the trial court under seal do not conclusively establish fraud.

### Deceit

[¶44.]     SDCL 20-10-1 provides that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20-10-2[11] provides four possible options that constitute deceit within the meaning of SDCL 20-10-1. The trial court held

---

11.     SDCL 20-10-2 provides:

> A deceit within the meaning of § 20-10-1 is either:
>     (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>     (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
>     (3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
>     (4) A promise made without any intention of performing.

that the provisions of SDCL 20-10-2 were established by the undisputed material facts. There is no indication which option the trial court believed was satisfied in this case. We have held that a tort action for deceit requires proof that material, intentional misrepresentations were made and that the plaintiff relied on them. *Littau v. Midwest Commodities, Inc.*, 316 N.W.2d 639, 643 (S.D. 1982). We have previously stated that "these statutes are declaratory of common law and comprehend an intention to mislead." *Schwaiger*, 2002 S.D. 97, ¶ 10, 652 N.W.2d at 377. There are disputed issues of fact precluding summary judgment on whether Defendants committed deceit under SDCL 20-10-1.

[¶45.]   **4.   Whether the trial court erred in concluding as a matter of law that the Kenco and Kroeplin judgments were void for failure to satisfy the requirements of SDCL 21-26-3.**

[¶46.]   Arnoldys claim that the judgments are void for several reasons: the debts had exceeded the statute of limitations; the confessions did not concisely state the facts from which the debts arose because neither Kenco nor Kroeplin provided a description of the goods or services that were provided; the bills do not separate the amount owed from the interest; there were discrepancies in the balance owed to Kenco; and, the Kenco and Kroeplin judgments were settled for $15,000 total, an amount substantially lower than the $887,290.43 confessed. The trial court concluded the Kenco and the Kroeplin judgments were void for failure to satisfy the requirements of SDCL 21-26-3, which provides, "If the judgment to be confessed be for money due or to become due, the defendant's verified statement must state concisely the facts out of which the debt arose, and must show that the sum confessed therefor is justly due, or to become due." Specifically, the trial court held

that the underlying debts of the Kenco and Kroeplin judgments had each exceeded the six-year statute of limitations by the time Finneman confessed them in May 2008. The trial court also held that the Kenco and Kroeplin debts had been "revived" by Defendants, even though the two companies had written off the debts.

[¶47.]    No South Dakota case law exists regarding this statute. Judge Delaney signed the confessed judgments of Finneman in a separate action and found the judgments adequate. If Arnoldys have evidence to substantiate their claim that the judgments are invalid, this issue will need to be presented to a jury. We do not decide that the confessed judgments are facially fraudulent. The facts leading up to the confessions of the judgments that would resolve factual disputes regarding the validity of the confessions are not sufficiently established in the record. A jury will have to determine such facts.

## CONCLUSION

[¶48.]    Arnoldys have standing to challenge the judgments. Because we find the trial court erred in granting summary judgment to Arnoldys, we do not reach Defendants' other issues. This case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶49.]    ZINTER, MEIERHENRY, and SEVERSON, Justices, and SABERS, Retired Justice, concur.

[¶50.]    SABERS, Retired Justice, sitting for KONENKAMP, Justice, disqualified.